STATE of Missouri,
Plaintiff–Respondent,

v.

Ervin Albert HAAS,
Defendant–Appellant.

No. 40232.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 5, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 12, 1980.

Application to Transfer Denied
Feb. 9, 1981.

Terry Burnet, Asst. Public Defender, St. Louis, for defendant–appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff–respondent.

KELLY, Chief Judge.

Ervin Albert Haas, the appellant, was convicted by a jury in the Circuit Court of the City of St. Louis of three counts of Assault with Intent to Kill with Malice Aforethought, § 559.180 RSMo. 1969, Armed Criminal Action, § 556.140 RSMo. 1969, and Attempted Robbery, §§ 556.150(2) and

560.120 RSMo. 1969. He was sentenced to 40 years imprisonment on each of the Assault Counts, said sentences to be served concurrently; to 3 years imprisonment on the Armed Criminal Action Count and to 10 years imprisonment on the Attempted Robbery Count; the latter two sentences to be served consecutively to the sentences imposed on his convictions for the assault charges. He has perfected this appeal from those convictions.

On appeal, appellant presents four Points Relied On as grounds for the reversal of his convictions and remand of this cause to the Circuit Court for a new trial.

Appellant does not challenge the sufficiency of the evidence to sustain the jury's findings, so a short statement of the facts the jury could find from the evidence will be sufficient, with a more detailed recitation of the evidence where necessary for disposition of appellant's Points.

The state's evidence was that on November 17, 1976, at approximately 11:00 p. m. two men entered Bogart's Tavern in the City of St. Louis. One of these men wore a mask covering his face; the other was carrying a shotgun. The masked man approached Debbie Wren, a bartender in the Tavern, and demanded that she give him the money. As Ms. Wren turned towards the cash register she heard a shot and felt something "flick" off of her shirt. Gina Forman, who was also in the Tavern, in the meantime and after observing both of these men, ran to Bogart's back room where she informed Walter Serb, an off–duty police officer, of what had occurred in the front bar. Officer Serb drew his service revolver and started to run towards the front of the tavern, and as he did so, the man armed with the shotgun shot Officer Serb, causing him to black–out.

Robert Schaefer, another off–duty police officer who had been standing near Ms. Wren when the shot was fired at her, testified that it was the masked man who shot at Ms. Wren, missed her and hit a cooler. He also saw a third person outside the tavern pacing back and forth in front of the establishment. He also testified that he heard a second shot fired and a few seconds later saw his fellow officer, Officer Serb, collapse to the floor.

The masked man and his cohort fled the scene with Officer Schaefer in pursuit. The man with the shotgun ran directly west from the tavern and Officer Schaefer fired once at him before pursuing the masked man who ran down an alley and through a parking lot adjacent to the tavern, exchanging fire as they both ran. The masked man made good his escape, diving over a cyclone fence. Officer Schaefer found a ski mask, a dark coat, a pair of gloves and a revolver. Witnesses at trial testified that these articles were similar to those used by the masked man on the night of the attempted robbery, and also described the masked man as a black male in his middle twenties.

The morning following this occurrence, November 18, 1976, Ed Coleman, a resident of Magdala House, a half–way house, informed the police that he had overheard Haas plan the robbery of Bogart's and had asked him to aid in carrying out the robbery but that he declined to take part in it. He also testified that Haas told him he had "pulled the job."

Haas was arrested at his place of employment at approximately 1:45 p. m. the same day after Ed Coleman had informed the police. The arresting officers,–Green, Hollacher and Schwartz–read Haas his *Miranda* rights and after their arrival at the police station, questioned him. He agreed to make a statement and later to appear on video tape. He admitted his participation in the incident.

Appellant's first ground for reversal of his conviction is that the trial court erred in overruling his counsel's objections to the Assistant Circuit Attorney, in closing argument, mentioning his prior convictions as substantive evidence of the crimes charged.

Appellant testified in his own behalf during trial and in the course of his testimony he testified that in 1956 and again in 1964 he had been convicted of robbing a bank, and that he was on "mandatory release."

In his closing argument the Assistant Circuit Attorney argued:

> "Who is Ervin Haas? On his credibility whether he is a truth teller to you, 1956 conviction for robbing a bank; in 1964, conviction for bank robbery.
>
> Then he told you he is out on parole and he is convicted here for robbery and then he calls it mandatory release, a type of parole, when this happens.
>
> He is 43 years old. He has been around. He has got some experience."

The Assistant Circuit Attorney then argued that appellant was the more experienced of the triumvirate who took part in this robbery, emphasizing that Haas was the man behind the mask–that there was something special about the one man putting on the mask which made him different than the other two men who participated with him in the commission of these crimes. The prosecutor then directed his argument to the manner in which the attempted robbery took place: the two men enter the bar, one goes to the radiator between a "brick pillar–type thing that is three feet high" from an angle so he can cover the room and his masked friend at the bar while the third man was outside acting as a lookout. This, he argued, showed planning, that the culprits knew what they were doing and not just kids pulling their first job. At this point defense counsel objected as follows:

> "Your Honor, I will object to this as being improper argument."

■ To preserve any error in a ruling on an objection to the admissibility of evidence or the propriety of argument it is fundamental that the objection be specific and give a valid reason so that the trial court is afforded an opportunity to rule on the point. *State v. Williams*, 575 S.W.2d 838, 840[8] (Mo.App.1978). The objection in this case does not satisfy this requirement because it did not inform the trial court that the basis for the objection was that the prosecutor was arguing appellant's prior convictions as substantive evidence of the guilt of the defendant in the crimes for which he was then on trial.

■ While this argument may come close to the line, we conclude that the argument was not prejudicial in the context where the prosecutor argued that the manner in which the crimes were committed showed evidence of planning and that the culprits were not inexperienced. We hold that the trial court did not commit error in overruling appellant's counsel's objection.

Appellant's next Point Relied On is that the trial court erred in overruling his Motion to Suppress Statements because the state failed to present sufficient evidence to support a finding that said statements were voluntary.

As might be expected, there was conflicting evidence on this question. The state's witnesses testified that appellant was given his *Miranda* rights when taken into custody and prior to any interrogation. He was not interrogated until his arrival at the police station and indicated that he understood his rights and made a statement of approximately one hour's length, agreed to make a videotaped statement, and was placed in a lineup. Sergeant Green, one of the arresting officers, testified that no one struck and no one threatened appellant in his presence; on cross–examination he testified that appellant made no complaints to him about any injuries and had no difficulty walking but admitted he did not look at appellant's hands. He did arrange for the appellant to be taken to the hospital when appellant complained of pain after his videotape session.

James Pentz, program director of closed circuit television for the St. Louis Police Department, testified that he taped a question and answer session with appellant with Detective Riley on November 18, 1976, and at that time observed no obvious injuries to appellant. Detective Riley testified and he too saw no injuries to appellant nor observe him show any trouble walking. He admitted that after the videotape session had concluded appellant complained of an injury to his hand and noticed that it was swollen. He informed Sergeant Green of this condition.

In appellant's behalf, Mrs. Del C. Hardy, an employee of the purchasing department of St. Louis University, testified that on November 18, 1976, appellant came to work and had a bruised second finger on his right hand. Appellant was not limping at this time. Mrs. Hardy testified that police officers arrested appellant that day at approximately 1:00 o'clock. Mrs. Hardy stated she believed appellant called a cut in his leg to Mr. Porter's attention, but not to hers. Mr. Jack Porter, also an employee for St. Louis University, testified that on November 18, appellant had a swollen finger and went to a doctor on campus for x–rays. Appellant stated that he had slipped on a bunk bed and injured the finger. Appellant did not mention an injured leg to him, but one of the girls in the office mentioned it to him. Mr. Thomas Motley testified that he saw appellant on November 19th at police headquarters and that appellant walked with a limp, his fingers looked funny, there were slight abrasions on his face, which was puffy, and appellant's rib cage showed discoloration and puffiness. Ms. Carol Phillips, custodian of medical records for Homer G. Phillips Hospital, testified that records showed that on November 18, 1976, a physical examination of appellant revealed a compression fracture of the lumbar spine and a hand fracture. Records for City Hospital Number One on November 18, 1976, showed a fracture of the left index finger and a fracture of a right finger.

Appellant testified that on November 18th he injured his right ring finger after slipping while getting into a bunk bed. Appellant stated he was arrested on November 18, at approximately 1:15 by Sgt. Green, Detective Hollocher and Detective Schwartz and was then handcuffed. In the squad car, Sgt. Green told him that he was going to ask questions and that if appellant did not answer right he would be hit. Officer Hollocher struck appellant, and jabbed a ballpoint pen into his ear. At Central District Police Headquarters appellant was tripped and caused to fall downstairs and he was kicked by Officer Hollocher and some other person. Appellant stated when he refused to answer questions in the interrogation room, Detective Hollocher twisted his fingers and broke one of them on his left hand. Appellant was told that if he did not tell the officers what they wanted, the chief of detectives would break his legs. Appellant then agreed to make whatever statement the officers wished. Appellant stated he was asked by Sgt. Green to confirm a written statement, and at this time his back was injured and very painful. Appellant further stated that he was asked to make a videotaped statement and was refused an attorney until after he did so. After the taping session, appellant complained to Detectives Riley and Marcinkiewicz about pain and told them what had happened, and was then taken to City Hospital.

In rebuttal, Dr. Zarrin Salimi, M.D., testified that appellant's medical report from November 18, 1976, showed that his abdomen was soft without tenderness, which is normal, and that his chest was non–tender. The report showed appellant had a compression fracture and osteoporosis (diminished calcium). Dr. Salimi testified that a compression fracture usually occurs due to a vertical force, and with osteoporosis can come just from walking. The fracture on appellant's x–ray appeared to Dr. Salimi to be an old fracture. On cross–examination, Dr. Salimi testified that the x–ray was not of a proper position to determine the age of the fracture. Such a fracture can occur other than by direct vertical force. Officer Robert Schaefer, the officer who chased the ski–masked robber from Bogart's the night of the robbery, testified that the subject whom he chased jumped head–first over a cyclone fence.

■ Due to the fact appellant was in custody when these challenged statements were obtained by the police authorities the burden of proving they were voluntary rests on the state and it has the burden of proving their voluntariness by the preponderance of the evidence. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *State v. Hughes*, 596 S.W.2d 723, 726[3] (Mo. banc

1980); *State v. Olds*, 569 S.W.2d 744, 751[4] (Mo. banc 1978). Where, as here, the testimony conflicts, admission of the confession into evidence by the trial court is a matter of discretion. *State v. Williams*, 566 S.W.2d 841, 844[4] (Mo.App.1978). The question on appeal is whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given. *State v. Hughes*, supra, l.c. 727[5]; *State v. Alewing*, 474 S.W.2d 848, 852[3] (Mo.1971). The Court of Appeals is to defer to the trial court's ruling on the credibility of witnesses unless manifest error has been committed. *State v. Crowley*, 571 S.W.2d 460, 464[13] (Mo.App.1978).

■ We hold that under the evidence in this case the state met its burden of proof and the trial court did not err in denying appellant's motion to suppress statements.

Appellant's next ground he contends entitles him to have his conviction reversed is that the trial court erred in granting the state's request for a protective order precluding his trial counsel from commenting upon the state's failure to call as witnesses during the state's case, Detectives Schwartz, Hollocher, Marcinkiewicz and Atkins, all of whom were present, some all the time and others in and out during the interrogation of appellant and while his statement was videotaped.

■ The general rule in Missouri is that when a jury is made aware of a witness whose testimony it would appear from the facts and circumstances would be favorable to a party to the proceedings, and the witness is not called to testify, an inference may be drawn that his testimony, if adduced, would be adverse to that party. *State v. Ganaway*, 556 S.W.2d 67, 69[3] (Mo.App.1977). This rule applies only where the testimony of the absent witness would be material and relevant to issues and not merely cumulative or inadmissible and when said witness is more available to the party against whom the inference is to be drawn. *State v. Ganaway*, supra.

The state does not respond to appellant's argument that the detectives whose absence the appellant desired to comment about were not equally available to him; rather, its response is that the trial court did not err in precluding appellant's comment because the testimony of those detectives was already known to appellant because he had their testimony in depositions, and knew that their testimony would be cumulative of that of the other police officers in evidence.

While there are situations where this rule authorizing a party to comment upon the failure of the other party to call as a witness one who was not equally available and whose testimony one would expect to be favorable to the party who did not produce the witness, this court pointed out in *State v. Ganaway*, supra, that modern discovery procedures available to a defendant in criminal cases has largely eliminated the reasons upon which the rule was originally based. For this reason, this court said, 556 S.W.2d l.c. 70: "The trial judge therefore must be given great discretion in determining whether the facts and the preparatory efforts of the litigants warrant an invocation of the inference."

■ While the depositions taken by the appellant of these witnesses have not been incorporated in the record on appeal nor filed as exhibits, we glean from the transcript that during discussion prior to oral argument on the question of whether the protective order limiting argument concerning the failure of the state to call these witnesses that appellant's trial counsel had taken the depositions of each of them three months prior to trial and that the substance of their depositions testimony was a denial of any physical threats or conduct towards the appellant and that they had no knowledge of any physical threats or conduct toward him.

Under the circumstances of this case and the transcript of the record on appeal we hold the trial court did not abuse its discretion in granting the state's request for a protective order precluding defense counsel from commenting on the state's failure to

call detectives Schwartz and Hollocher, and rule this Point against appellant.[1]

Appellant's final Point Relied On is that the trial court erred in submitting to the jury an instruction not found in MAI–CR– Instruction No. 10–because (1) it is an incorrect statement of the law when applied to the three assault counts in that it contradicts and conflicts with the requirement that persons must "knowingly act together" by predicting guilt "if present" as required in Instruction No. 9–an MAI–CR 2.10 Instruction–and (2) it violates Rule 20.02(e) making it error to use a not–in–MAI–CR instruction when there is an MAI–CR instruction adequately covering the subject.[2]

Appellant argues in support of this Point that Instruction No. 10 gave undue prominence to that aspect of the case concerning appellant's acting in concert with others and did not require that the appellant "acted" together with others for him to be proven guilty of the three assault charges.

We hold that there was no error in the submission of Instruction No. 10 and rule this Point against appellant.

Instructions 9 and 10, as submitted, are intended to cover two different factual situations where two or more persons act in concert in the commission of a crime. Prior to enactment of the 1979 Criminal Code an accomplice, aider or abettor could be charged, tried, convicted and punished in the same manner as the principal without the necessity of proving the accomplice's state of mind. Instruction No. 10 covers the situation where a crime is committed by a participant which was not the direct object of the common plan but resulted from and in the course of carrying out the crime which was the subject of the common plan. This is the law in Missouri. *State v. Minor,* 556 S.W.2d 35, 40[10] (Mo.banc 1977) reversed on other grounds 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979); *State v. Sneed,* 549 S.W.2d 105, 106[3] (Mo.App. 1977). Instruction No. 9, on the other hand, is not intended to cover this situation. Notes on Use to MAI–CR 2.10.

Appellant was charged with assaulting Debbie Wren in Count V of the Indictment, Walter Serb, in Count III of the Indictment, and Robert Schaefer in Count IV of the Indictment. According to the state's evidence appellant was the masked robber, and it was he who fired the shot at Ms. Wren in the tavern and at Detective Schaefer while fleeing from the scene of the robbery. The second robber in the tavern, according to the state's evidence, is the one who was armed with the shotgun and shot at Detective Serb, while appellant was present in the tavern during the course of the attempted robbery. It was the shooting of Detective Serb to which this instruction was directed, and this was a natural or probable consequence of the robbery in which appellant had joined with others for the purpose of perpetrating, and the state was entitled to have the rule of law applicable thereto submitted in a proper instruction.

Rule 20.02(e) V.A.M.R. states that the giving of an instruction in violation of the Rule, or any applicable Notes On Use, constitutes error, its prejudicial effect to be judicially determined. Since there is no MAI–CR Instruction covering the criminal liability of a defendant under the factual situation presented in this case and the instruction submitting the applicable law did so correctly. We hold that there was no error and, if any, it was not prejudicial.

We hold the trial court did not err in submitting Instruction No. 10 to the jury and rule this Point against appellant.

1. Appellant cites a number of Illinois cases for the proposition that the State should have called as witnesses all persons who were present when appellant's confession was obtained, or, at least satisfactorily explained their absence, because of Sixth Amendment requirements. Missouri courts have not adopted this Rule, and we have not considered the desirability of adopting this Rule because this argument was not presented in the appellant's motion for new trial nor to the trial court in their discussions preliminary to the granting of the protective order.

2. This case was tried prior to January 1, 1979, and therefore all references to MAI–CR are to the pre–1979 volume.

■ Appellant's conviction on the charge of Armed Criminal Action, Count II of the Indictment, which the evidence shows arose out of and as a part of the Attempted Robbery, must be reversed. *Sours v. State*, 603 S.W.2d 592, 605–606[5] (Mo.banc 1980).

We affirm the judgment on Count I, Attempted Robbery First Degree, Count III, the assault on Walter Serb, Count IV, the assault on Robert Schaefer, and Count V, the assault on Debbie Wren. We reverse the conviction of appellant on Count II for the reasons stated.

STEPHAN, P. J., and STEWART, J., concur.