**STATE of Missouri, Respondent,**

v.

**Brian W. BEATTY, Appellant.**

**Brian W. BEATTY, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. WD 44424, WD 45778.

Missouri Court of Appeals,
Western District.

Jan. 12, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1993.

Application to Transfer Denied
April 20, 1993.

**58**

James R. Wyrsch, Jacqueline A. Cook, Charles Atwell, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and KENNEDY, JJ.

KENNEDY, Judge.

Defendant Brian Beatty was convicted upon jury trial of first degree murder, section 565.020.2 RSMo 1986,[1] and armed criminal action, section 571.015.1. He was sentenced to life imprisonment without the possibility of parole on the murder conviction and three years imprisonment on the armed criminal action conviction, to be served concurrently. He appeals his conviction, and also appeals the trial court's denial of his Rule 29.15 motion for post-conviction relief.

Defendant Beatty killed Frederick Combs by stabbing him in the chest with a knife at the Heritage Inn, a motel in Grandview, Missouri, during the evening of September 1, 1989. The three-inch blade of the folding "buck" knife penetrated Combs's heart and he died at or near the scene.

Beatty and Combs were both students at the GET Truck Driving School in Grandview and they were among several students of that school who were staying at the Heritage Inn at the time of the homicide.

The stabbing climaxed an altercation between defendant and Combs over a sum of money defendant claimed Combs owed to him. The altercation had waxed and waned over the space of a few hours. Combs's indebtedness to Beatty arose from their joint venture in the drug commerce. Beatty was demanding immediate payment, but Combs was unable or unwilling to pay the amount Beatty demanded. Combs was attempting to postpone payment until he could conclude some sort of business transaction, inferentially a drug sale. The state's evidence tended to show that the final phase of the altercation and the fatal stabbing took place in the second floor hall of the motel. A third person, one Theodis Lagrone, was attempting to hold the furious Beatty back from attacking Combs, but he was unsuccessful in doing so. Beatty's blow with the knife sent Combs to the floor. Beatty then kicked and stomped Combs about the head and body. Combs got to his feet, but collapsed again.

The police had been summoned and were on the scene while Beatty was bending over Combs's prostrate form, and before Combs breathed his last. Beatty was identified by witnesses as the person who had attacked Combs. He was arrested. He at first denied stabbing Combs, but later he volunteered a statement to the police which admitted the stabbing, but maintained that it had occurred earlier, outside the motel, before the altercation inside the motel.

Upon this second statement, made to Detective Engert of the Grandview Police Department, and testified to by Detective Engert, defendant says he was entitled to a self-defense instruction. We give the statement as nearly as possible in the words of Detective Engert:

"He told me that he remembered what had happened. He told me that he had been outside the hotel with Mr. Combs, they had gotten into a physical altercation; that he had delivered several blows to Mr. Combs when Mr. Combs bent down to pick up a rock and was going to strike Mr. Beatty with the rock. He said he ducked out of the way, removed the knife, opened the blade, laying it side-

---

1. All statutory references are to RSMo 1986 unless otherwise noted.

ways, stabbed Mr. Combs in the chest. Mr. Combs then dropped the rock, realized what happened and told him that, "I'm going to get you," and ran inside the building. Mr. Beatty stated that he then ran inside the building after him for fear that he was going to get a gun ... he stated that when he entered back into the hotel, he still had the knife in his hand and the blade was open. And when he closed the blade, he closed it on his thumb...."

Our first question on appeal is whether Detective Engert's testimony of Mr. Beatty's statement to him was evidence of self-defense which would entitle him to a self-defense instruction. As earlier noted, the trial court refused a self-defense instruction, though requested by defendant.

The attorney-general argues that any part of Mr. Beatty's statement to the police which supported the defense of self-defense was not substantial evidence thereof—that the self-serving statements in the confession were inadmissible, and only the incriminating parts thereof were admissible.

The attorney-general then argues that, even if those parts of Mr. Beatty's statement which were self-serving constituted substantial evidence of their truth, still the statements do not support a self-defense instruction, because they show that Mr. Beatty, by striking Mr. Combs, had precipitated Mr. Combs's threatened attack upon him, against which, according to Mr. Beatty's statement, he was defending himself when he stabbed Mr. Combs.

■ The attorney general is wrong in his first argument and right in the second. If a confession is admitted into evidence, the whole of the confession is in evidence. It would be incongruous for a defendant's incriminating statement to be considered in isolation from any ameliorating circumstances therein described. He might describe a killing in a classic self-defense situation. How could it be said that the killing could be submitted to the jury, but the circumstances constituting self-defense could not? While there are no Missouri cases on point, it appears to be a universal

rule that relevant exculpatory statements made during a confession are admissible if other portions of the confession are used by the prosecution. "The ancient rule in this Commonwealth is that the prosecution has no right to introduce selected portions of a defendant's confession and exclude those which tend to mitigate, justify, or excuse the offense charged." *Boggs v. Commonwealth*, 229 Va. 501, 331 S.E.2d 407, 419 (1985), *cert. denied, Boggs v. Virginia*, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 347 (1986). "A confession ... must be used in its entirety so that the person affected thereby may have the benefit of any exculpation that the whole statement may afford." *State v. Clay*, 441 So.2d 1227, 1234 (La.App.1983). See also, *Christopher v. State*, 583 So.2d 642 (Fla. 1991); *Khoury v. State*, 669 S.W.2d 731 (Tex.App.1984).

■ Defendant Beatty's statement in this case, however, did not describe a self-defense situation. One may not precipitate a physical fight, then claim self-defense when the violence escalates and he kills his antagonist to fend off his antagonist's response to his aggression. That is how Mr. Beatty described his encounter with Mr. Combs outside the motel, where, according to Mr. Beatty's second statement, the stabbing took place. "One of the conditions of the right to rely upon self-defense is that the person relying upon the defense not have provoked the use of force against himself." *State v. Taylor*, 610 S.W.2d 1 (Mo.1981), see also, *State v. Chambers*, 671 S.W.2d 781 (Mo. banc 1984).

■ Defendant Beatty in a Rule 25.04 V.A.M.R. discovery request requested records of the arrests of state's witness Theodis Lagrone, Jr. The state declined to furnish these, although it furnished records of Mr. Lagrone's prior convictions, as required by Rule 25.03(A)(7). Defendant Beatty says the court erred in denying his motion to require the state to furnish a list of Mr. Lagrone's arrests. Mr. Beatty acknowledges that his motion for the discovery of the arrests was addressed to the court's discretion, *see State v. Johnson*, 702 S.W.2d 65, 73 (Mo. banc 1985), but says

the court abused its discretion in denying the discovery.

A mid-trial hearing showed that Mr. Lagrone's arrest records would have revealed an arrest on charges of arson and battery in Arkansas, which were pending in Arkansas at the time of the Beatty trial. Mr. Lagrone had in fact made guilty plea agreements on the two charges, but he had not yet been sentenced. Mr. Beatty argues that if this information had been disclosed to him before trial, he could have explored what promises or concessions had been made to Mr. Lagrone on those Arkansas charges in return for his testimony in the Beatty case. Lagrone in voir dire testimony, outside the jury's hearing, testified there had been no consideration given him on the Arkansas charges in return for his testimony in the Beatty case in Missouri. He had been subpoenaed in Arkansas to testify in the Beatty case in Missouri, and Missouri officers had transported him from Arkansas to Missouri for the trial. Although Mr. Lagrone testified before the jury, defense counsel did not (as he might have done, *see State v. Wells*, 752 S.W.2d 396, 400 (Mo.App.1988)) cross-examine him about the charges pending in Arkansas in order to find out if Mr. Lagrone was testifying under any threat or promise with respect to the Arkansas charges. Even on this appeal, Mr. Beatty does not say some deal for leniency for Mr. Lagrone on the Arkansas charges could have been shown if Mr. Beatty had known about the pending charges in time; he says only that counsel's investigating whether there had been any such promise or threat to Mr. Lagrone had taken valuable time which might have been devoted to trial preparation. Contrast the situation in *State v. Brooks*, 513 S.W.2d 168 (Mo.App.1973), where it was shown by post-trial events that the witness—who was charged jointly with the defendant—had been promised leniency in return for his testimony, which was essential to defendant's conviction. The Eastern District of this court reversed a conviction on the ground that the state in bad faith had *suppressed material evidence.*

We cannot say the trial court erred in refusing Mr. Beatty's discovery request for Mr. Lagrone's arrests known to the state, or that defendant Beatty suffered any prejudice from the state's failure to disclose Mr. Lagrone's arrest record, including the pending Arkansas charges.

■ For his next allegation of error, defendant says the court erred in failing to instruct on involuntary manslaughter. The court instructed only on first degree murder and second degree murder, not on involuntary manslaughter. A person commits the crime of involuntary manslaughter if he "recklessly causes the death of another." Sec. 565.024.1(1). If the evidence establishes a basis for acquittal of the greater offense (i.e., first degree murder and second degree murder) and conviction of the lesser included offense of involuntary manslaughter, then defendant is entitled to an involuntary manslaughter instruction. Section 556.046.2; *State v. Stepter*, 794 S.W.2d 649, 652 (Mo. banc 1990).

■ Defendant Beatty says the jury might have believed from the evidence "that defendant did not intend to kill Mr. Combs, but consciously ignored a substantial and unjustifiable risk that Combs might be stabbed if defendant wielded a knife around Combs during the altercation in the parking lot." We are unable to read any such hypothesis in the evidence in this record. There is no evidence in this record, from any source, that defendant acted "recklessly" in his stabbing of Mr. Combs; all the evidence is that he acted intentionally and deliberately. See *State v. Hamlett*, 756 S.W.2d 197 (Mo.App.1988).

■ Next, defendant Beatty attacks the first degree murder instruction. This instruction follows MAI–CR3rd 313.02, but defendant says the pattern instruction is wrong in that it does not follow Section 556.020. One element of first degree murder, under Section 556.020, is that defendant "knowingly" causes the death of another person. MAI–CR3rd 313.02 does not expressly require that the jury find that defendant "knowingly" caused the other persons's death. It allows conviction if "defendant was aware that his conduct was practically certain to cause the death of

Frederick M. Combs." Defendant says this paragraph is ambiguous, in that the jury might think they were to convict if defendant, after he had stabbed Mr. Combs, was aware the stabbing was practically certain to cause his death ... even though they might further believe that, before the stabbing, defendant was merely reckless and was not then—i.e., before the stabbing—aware his conduct was practically certain to cause Mr. Combs's death.

We do not think the jury could or would have been misled by this instruction in the way Mr. Beatty suggests. Read as a whole, the instruction makes it unmistakably clear that the jury's inquiry is about the defendant's state of mind at and before the time of the stabbing, not after.

Mr. Beatty's final allegation of error is directed at prosecutor's allegedly improper argument to the jury. The prosecutor in the course of his argument made the following statements which are said to have been improper:

"Ladies and Gentlemen: There is a lot of violence in our community. There is a lot of violence in the black community. Black on black homicides in this community are out of hand ... It's out of hand in this community and we've got to do something about it ladies and gentlemen. You can turn your head and you can let this man walk out of the courtroom, if that's what you want to do. But it's your community and you're the ones that have to live in it. Frederick Combs cries for justice from his grave."

Defendant says the court's overruling of defendant's objections to the arguments are reversible error. We hold, however, that the trial court was within its allowable discretion in overruling the objections.

■■■ We first note that objections made by defense counsel at trial were insufficient to preserve the error for appeal. "To preserve any error in a ruling on an objection to the admissibility of argument it is fundamental that the objection be specific and give a valid reason so that the trial court is afforded an opportunity to rule on this point." (citations omitted) *State v. Haas*, 610 S.W.2d 68, 71 (Mo.App.

1980). One of defense counsel's objections stated that the argument was improper. This is not specific enough. *Id.* The other objection gave no basis. We therefore review for plain error under Rule 30.20 V.A.M.R., and will reverse only if the argument is plainly unwarranted and if it is apparent that the remarks in question had a decisive effect on the jury's verdict. *State v. Davis*, 825 S.W.2d 948, 951 (Mo. App.1992).

■■■ The defendant has failed to show that the comments made had a decisive effect on the verdict, so that no relief short of a mistrial could have corrected any error. The statements made regarding the prevalence of crime in the black community were not improper. Comments about the prevalence of crime in the community need not be supported by evidence introduced at trial. *Kenley v. State*, 759 S.W.2d 340, 354 (Mo.App.1988). We reject counsel's argument that this comment appealed to racial bias. On the contrary, the comment seems to have been aimed at discouraging the jurors from using any bias toward blacks in their deliberations. The argument about the victim crying for justice from his grave, while somewhat dramatic, does not mandate reversal of the conviction.

We turn now to defendant's appeal from the denial of his Rule 29.15 motion. The motion alleged ineffective assistance of trial counsel. The trial court denied it after an evidentiary hearing, and defendant says the court erred in so doing.

■■■ Defendant first says his trial counsel failed to advise him that his testimony might be necessary to support a self-defense instruction. He alleges his counsel advised him not to testify at all.

Trial counsel testified on the Rule 29.15 motion hearing, however, that it was defendant Beatty's own decision not to testify, although he conceded that he had not tried to persuade him to testify. (Beatty, during the trial of the case, had testified out of the jury's hearing, that he chose not to testify, and that his decision was his own and was voluntary.) Beatty was firm in his decision not to testify, trial counsel said, even after

it became clear that the court was not going to give the self-defense instruction on the record which had been made at the close of defendant's case. Trial counsel testified further that he thought Beatty had made the right decision. He said he was unable to tie Beatty down to a coherent version of the stabbing incident. At one time, Beatty would claim the stabbing was an accident, another time that it was the result of anger, and yet another time that it was self-defense.

We do not find the trial court was clearly wrong in her rejection of this ground of defendant's Rule 29.15 motion. Assuming defendant's testimony on the Rule 29.15 motion—if he had given the same testimony at the trial—would have entitled him to a self-defense instruction, there is no evidence at all that Beatty had given trial counsel the account which he gave on the Rule 29.15 motion hearing. (This account had Lagrone joining Combs as an aggressor, after which Beatty for the first time took his knife out of his pocket, and in pushing Combs off, accidentally stabbed him.)

There were several factors entering into trial counsel's decision to approve, or not to disapprove, Beatty's decision not to testify. One was that trial counsel believed the state's case had serious weaknesses, and that Beatty's testimony—especially if it varied substantially from his earlier account, as testified to by Police Officer Engert—would hurt him more than it would help him.

■ The decision whether or not to have a defendant testify is one of trial strategy. Trial counsel is afforded broad latitude as to questions of trial strategy and is not to be judged ineffective simply because, in retrospect, the decision may seem to have been an error in judgment. *State v. Davis*, 814 S.W.2d 593, 603 (Mo. banc 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 911, 116 L.Ed.2d 812 (1992). We are not left with the definite and firm impression that a mistake was made in not presenting defendant's testimony. *State v. Feltrop*, 803 S.W.2d 1, 21 (Mo. banc 1991),

*cert. denied,* —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

■ Defendant points to other deficiencies in trial counsel's performance, which he says rendered trial counsel's assistance ineffective. One such alleged deficiency was trial counsel's failure to investigate whether blood on defendant's clothes after the stabbing was defendant's blood or decedent's blood. Defendant offered no evidence that the blood on the clothing was in fact his and not decedent's; he only says it might have been. If trial counsel had proved the blood was defendant's (from cutting his thumb as he closed his knife), and not decedent's, it would have not made the slightest difference in the posture of the case; there was no issue but that the stabbing had occurred.

■ Yet another alleged mistake in strategy was trial counsel's agreement with prosecutor that proof would not be offered that the decedent had cocaine on his person at the time of his death. This stipulation was made in return for the prosecutor's agreement not to prove that defendant had been using crack cocaine on the day of the stabbing. We are unable to say trial counsel was ineffective in making such a stipulation.

■ Another alleged deficiency in trial counsel's performance was his failure to object to prosecutor's statements in argument to the jury which we have considered earlier in the opinion. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). We cannot think these statements, or trial counsel's failure to object to them, had any effect upon the result of the trial.

The trial court's denial of defendant's Rule 29.15 motion is not clearly erroneous. Rule 29.15(j); *State v. Martin*, 815 S.W.2d 127 (Mo.App.1991).

Defendant's conviction is affirmed. Trial Court's denial of defendant's Rule 29.15

motion for post conviction relief is affirmed.

All concur.