STATE of Missouri, Respondent,

v.

Samuel L. JOHNSTON, Appellant.

No. WD 47802.

Missouri Court of Appeals,
Western District.

Jan. 11, 1994.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Beal, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

PER CURIAM.

At issue is the sufficiency of the evidence on the mental state supporting appellant Samuel L. Johnston's conviction of second degree murder, section 565.021.1(1), RSMo 1986.[1] Appellant admitted shooting and killing his friend, Casey Holcomb. The jury was instructed on both second degree murder and involuntary manslaughter. In addition to the second degree murder verdict, the jury found appellant guilty of armed criminal action, section 571.015.1. The trial court followed the jury's recommendation and sentenced appellant to consecutive prison terms of fifteen and three years.

We affirm.

Appellant lived with his sister and her family. During the morning of August 18, 1992, appellant and his brother-in-law ran errands and drank beer. Around noon the family assembled in the kitchen. Casey Holcomb and two friends stopped by as the family was preparing for lunch. Casey greeted appellant, his best friend, who was seated at the kitchen table.

Appellant and Casey talked, joked, and laughed. Casey lifted his shirt, removed a .22 caliber, single action Ruger revolver and handed it to appellant. Unloading the revolver, appellant tilted it upward while he opened the side lip releasing the cylinder that encompassed six chambers. He turned the cylinder. Three shells fell out.

The two friends continued bantering as appellant sat at the kitchen table and as Casey stood nearby. Appellant then pointed the gun upward toward Casey's head. Ap-

pellant pulled the trigger. CLICK! Someone in the kitchen commented about the stupidity in playing with guns. Appellant pulled the trigger again. CLICK! Casey stood silent. Appellant pulled the trigger the third time. BANG! Casey Holcomb lay on the floor fatally wounded by a bullet wound through the forehead between the eyes. Appellant kneeled over Casey, uttering, "You are the best friend I ever had."

The deputy sheriff summoned to the scene found appellant in the front yard. Appellant was emotionally distraught and crying; he had blood smeared across his bare chest; he smelled of beer. Appellant told the deputy: "You don't think I did it on purpose. I just shot my best friend." After being taken into custody and given his *Miranda* rights, appellant explained to the sheriff that he had shot Casey after pointing the gun at his head. However, appellant added that he pulled the trigger thinking the gun was unloaded and pointed upward.

The sheriff's department investigated the scene and interviewed the witnesses to the shooting. During the investigation, the officers found on the kitchen table the .22 caliber Ruger revolver containing one spent cartridge in one chamber. The officers also recovered a total of three .22 caliber live rounds: one round was on the kitchen table and two others were in bowls of taco fixings on the table. In an interview, appellant's brother-in-law recalled that appellant and Casey Holcomb occasionally played a game called "Chicken." That game involved holding a gun to each other's head and pulling the trigger.

Appellant acknowledges that he caused the death of Casey Holcomb. However, he contends that insufficient evidence established that he acted "knowingly." According to appellant, no evidence supported the mental state essential to conviction of second degree murder under section 565.021.1(1). Appellant insists that his convictions of second degree murder and armed criminal action must fail for lack of a submissible case against him.

1. All statutory references are to RSMo 1986 unless otherwise noted.

In evaluating the submissibility of the State's case, we are limited to determining the existence of evidence sufficient to persuade any reasonable juror beyond a reasonable doubt on each element of the crime. *State v. O'Brien,* 857 S.W.2d 212, 215 (Mo. banc 1993). We review all of the evidence in the light most favorable to the prosecution. *Id.* at 215–16. Thus, we accept as true the evidence that supports a finding of guilt, and we indulge all logical inferences reasonably drawn from the evidence that support a finding of guilt. *Id.* at 216. Conversely, we ignore all evidence and inferences that fail to support a finding of guilt. *Id.* at 216.

Here, to make a submissible case on second degree murder, the State was required to show that appellant knowingly caused the death of Casey Holcomb. § 565.-021.1(1). Submissibility on the mental element of knowledge entailed showing that appellant knew or was aware that his conduct was causing or was practically certain to cause the death of Casey Holcomb. MAI–CR 3d 313.04; § 562.016.3(2). One who acts "knowingly" does not necessarily desire by his conduct to cause death; rather he is aware that his conduct is practically certain to cause death. CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 27 (14th ed. 1978); *see* MODEL PENAL CODE § 2.02 cmt. 2 (1985). In showing the requisite mental state, the State need only establish that the defendant must have known that death was practically certain to follow from his conduct. *State v. Harris,* 825 S.W.2d 644, 647 (Mo.App.1992). Proving that the defendant infallibly knew that death would follow is not required. *Id.*

Direct evidence of a particular culpable mental state is seldom available. Consequently, proof of the mental state usually rests on circumstantial evidence and permissible inferences. *Id.* The State may establish the mental element by evidence of and inferences from the defendant's conduct before the act, the act itself, and the defendant's conduct after the act. *State v. Johnson,* 770 S.W.2d 263, 267 (Mo.App.1989). Inferences of the defendant's awareness that his conduct was practically certain to cause death may be drawn from numerous actions.

Examples include checking the chamber of a revolver before pointing the weapon and pulling the trigger, *State v. Flynn,* 541 S.W.2d 344, 346 (Mo.App.1976); pointing a loaded gun at the victim and pulling the trigger, *State v. O'Neill,* 825 S.W.2d 376, 378 (Mo. App.1992); and shooting the victim in a vital part of his body at close range, *State v. Light,* 835 S.W.2d 933, 936 (Mo.App.1992).

Our review of the evidence convinces us that reasonable inferences support a finding that appellant was aware that the revolver was loaded when he pulled the trigger. In unloading the revolver, appellant followed the proper procedure by tilting the revolver upward and allowing the shells to fall out. Only three shells fell out of the six-chamber revolver. Further, appellant and Casey's past participation in a game called "Chicken" allows inferences that they played with a loaded gun and that they were playing the game when Casey was shot. Finally, appellant's handling of the revolver and Casey's resulting death reasonably permit a finding that appellant acted "knowingly" in conformity with the mental element of second degree murder. Appellant pointed the revolver toward Casey's head as Casey stood nearby. With the revolver pointed at Casey, appellant pulled the trigger three times. The fatal shot struck Casey in the forehead between the eyes.

We conclude that evidence existed sufficient to persuade any reasonable juror beyond a reasonable doubt that appellant must have been aware that his conduct was practically certain to cause the death of Casey Holcomb. By its verdict, the jury rejected evidence that appellant failed to realize that the gun was loaded, and that the shooting was inadvertent.

We accordingly affirm the judgment of conviction.