**STATE of Missouri, Respondent,**

v.

**Joe Alan SMITH, Appellant.**

**No. WD 48909.**

Missouri Court of Appeals,
Western District.

Nov. 8, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 27, 1994.

Application to Transfer Denied
Feb. 21, 1995.

Willard B. Bunch, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ELLIS, P.J., and BERREY and SMART, JJ.

BERREY, Judge.

Appellant was convicted of operating his motor vehicle in such a manner as to knowingly cause the death of James M. Leach, an off duty sergeant[1] on the Kansas City police force and citizen David Biggers. He was convicted on two counts of murder in the second degree, Counts I and III, and two counts of armed criminal action, Counts II and IV. He was sentenced to life imprisonment on Counts I and III, and ten years each on Counts II and IV. Counts I, II and III were ordered to run concurrently to each other and Count IV to run consecutively to Counts I, II & III. The state did not submit on any other lesser included offenses.

The state called twenty-five witnesses to establish its contention per its amended information in lieu of the indictments that appellant knowingly struck Leach and Biggers with the vehicle he was operating.

Appellant alleges four points of trial court error: 1) the state failed to make a submissible case that appellant had the requisite culpable mental state to be guilty of second degree murder; 2) in not submitting appellant's proposed involuntary manslaughter Instructions A and B on Counts I and III; 3) in not sustaining appellant's objection to the state's argument regarding production of a police report; and, 4) submitting Instructions VI and VII, the verdict directors on armed criminal action because they did not require the jury to find the automobile was used as a

---

1. At night and on the week-ends, the Westport area is patrolled by off-duty police officers who are in the employ of an association of Westport businessmen. Sergeant Leach was patrolling Westport for the "association" that evening.

dangerous instrument, in that they did not submit on motive and intent. We affirm.

The relevant facts are as follows. On May 1, 1992, appellant was living with his parents in Platte Woods, Missouri and dating a Sedalia woman, Bonnie Jean Wagenknecht. On that evening, appellant and Ms. Wagenknecht decided to celebrate his twenty-eighth birthday at Westport. They left his parents' house in Ms. Wagenknecht's car, a light blue 1977 Chevrolet Monte Carlo. Ms. Wagenknecht allowed appellant to drive even though she knew that his operator's license had been revoked.

Appellant consumed two "Screwdrivers" [2] while driving to Westport. They arrived at Westport between 11:30 p.m. and 12:00 midnight and appellant parked in a lot next to Chili's restaurant. They then walked across the street to the Lone Star bar and appellant retained the keys to Ms. Wagenknecht's car.

Appellant and Ms. Wagenknecht danced and drank at the Lone Star. During this time, appellant drank six Screwdrivers and two Long Island Teas, a mixed drink comprised of five white liquors. Towards the end of the evening, Ms. Wagenknecht went to the restroom and when she returned, she was unable to find appellant or her car.

A street vendor observed appellant leave the Lone Star and go to "a blueish colored car" in the parking lot. Appellant then drove this vehicle to the entrance of the parking lot which faced Westport Road. At this time, the parking gate or "arm gate" had been lowered, and the entrance chained off. Appellant drove the Monte Carlo up to the gate and broke the "arm gate." He then maneuvered the car under the chain by alternatively pressing on the gas pedal and then letting off until the chain passed over the top of the car. He rolled through and then sped out and fishtailed. After appellant pulled out into the street, and looked left, toward the police barricades and the large crowd of people behind the barricades, he abruptly "sat up like an idea popped into his head," and

then turned right on Westport Road, in the opposite direction.

Appellant drove westbound on Westport Road at a normal rate of speed for a short distance, then made a U-turn and parked the Monte Carlo facing east toward the barricades. He parked there for ten to fifteen minutes.

On this evening, Officer Sharon Laningham was assigned to the barricades located at the intersection of Mill and Westport Road. This area was "[v]ery well lit" and there was a sign on the barricade that read, "Road Closed." The barricades were "very large" and were painted with fluorescent orange paint "that sticks out." Flashing yellow lights were attached to the top of the barricades.

Later that evening, Officer Laningham was working with Sergeant Jim Leach. Both officers were in full uniform. After Sergeant Leach and Officer Laningham returned to the barricades from getting a soda, they positioned themselves behind the "northmost" barricade at Westport and Mill and faced east. Only "seconds" after they returned to their barricades, the appellant's car began "creeping" toward the two officers. Appellant stuck his hand out the window and shouted "Rodney King." [3] Several people in the crowd "shouted back" angrily. Appellant, who had a "very serious look on his face," stepped on the gas, "like somebody racing," causing his tires to squeal, and headed directly for the barricades at a speed of between fifty and sixty miles an hour.

Originally, appellant drove the car in the driving lane, but switched to the turn lane just before he drove through the barricades. When appellant drove through the barricades, the car shattered the barricade, causing it to explode into pieces. Officer Laningham screamed "Jim" and attempted to pull him out of the way by his shirt. The speeding vehicle struck Sergeant Leach and a pedestrian, David Biggers, who was crossing the road behind the barricades. The impact

---

2. An alcoholic drink usually comprised of vodka and orange juice.

3. This was shortly after the first state criminal trial of the police officers who were accused of using excessive force on Rodney King. All charges against the officers resulted in either "not guilty" verdicts or a "hung" jury.

sent their bodies flying twelve to fifteen feet in the air and 85 to 90 feet away from the point of impact. Several other people were injured. Appellant did not apply his brakes or take any evasive action. In fact, a witness testified that "if anything, he accelerated." Just after appellant crashed through the barricades, he looked back over his right shoulder. Appellant appeared to slow down slightly as he approached the barricades at Westport and Broadway, and began braking and steering, maneuvering around the people that were still walking or running in the street. Appellant was in control of the vehicle and did not appear to be driving in an erratic manner. He slowed down to drive between the barricades at Westport and Broadway. Appellant then turned left and headed north on Broadway. Appellant made the turn at approximately 45 to 50 miles per hour. The car did not fishtail and appellant seemed to be in control of the car. Appellant had both hands on the steering wheel, and was looking straight ahead, his face locked in a "fixed stare."

The police attempted to chase appellant, but they lost sight of appellant's vehicle. Appellant continued to head north on Broadway and increased his speed to 65 to 70 miles per hour. Appellant then hit an embankment. The car he was operating was a 1977 light blue Monte Carlo. It went off the road and flipped over and came to rest, upside down. Appellant was unconscious when the police and fireman arrived at the scene. After approximately 20 minutes, appellant regained consciousness and woke up screaming obscenities and yelling at the top of his lungs. Appellant was placed under arrest and continued to scream obscenities.

Appellant suffered facial and head injuries and was taken to the emergency room of the Truman Medical Center. Michael Reizer, who was injured by appellant's actions, was also being treated there for injuries. While strapped to a backboard gurney, Reizer heard someone say, "two or three years for manslaughter. That's all I'll get for killing the cop." The speaker kept repeating these words for the next two or three minutes. Reizer said he could not see the speaker, but "[he] was loud and obnoxious and [using] lots of profanity." Sergeant Leach was the only officer killed in Kansas City that night.

When appellant was questioned by police, he admitted that he had been in Westport with Ms. Wagenknecht, but said he did not recall wrecking her car and that Ms. Wagenknecht had been driving the Monte Carlo that evening because he did not have a driver's license. He also asked the police several times if anybody could identify him as the driver of the car that struck the police officer. Appellant was asked how he was injured and he replied that "I might have sustained injuries in a fight." He also showed no reaction when the officer informed him that Ms. Wagenknecht had been sexually assaulted after he left the bar without her.

The evidence showed that a hood ornament from the Monte Carlo operated by appellant was found in the parking lot next to Chili's. DNA testing showed that all of the blood found inside the damaged Monte Carlo was appellant's. Paint chips removed from the victims' clothing matched paint standards taken from the Monte Carlo. The bumper of the Monte Carlo contained a fabric weave pattern that matched the weave pattern of victim Bigger's blue jeans. A line pattern imbedded in the rubber molding next to the car's front bumper was consistent with the grill frame pattern of a four-by-four post that had been part of one of the damaged barricades.

Appellant testified in his own defense that[°] he remembered driving to Westport with his girlfriend, Ms. Wagenknecht, and drinking and dancing with her at the Lone Star. He testified that he did not remember leaving the Lone Star, and that his last memory of that evening was dancing at the Lone Star with Ms. Wagenknecht. His next memory was waking up in the City Jail the following morning. Appellant was convicted by a jury and this appeal followed.

I

█ In appellant's first point, he claims that the trial court erred in overruling his "motion for judgment of acquittal, at the close of all the evidence, because the state failed to make a submissible case that [he] had the requisite culpable mental state to be

guilty of second degree murder."[4] We disagree.

■ In evaluating the submissibility of the state's case, we are limited to determining the existence of evidence sufficient to persuade any reasonable juror beyond a reasonable doubt on each element of the crime. *State v. O'Brien*, 857 S.W.2d 212, 215 (Mo. banc 1993). We review all of the evidence in the light most favorable to the prosecution. *Id.* at 215–16. Therefore, we accept as true the evidence that supports a finding of guilt, and we indulge all logical inferences reasonably drawn from the evidence that support a finding of guilt. *Id.* at 216. We ignore all evidence and inferences that fail to support a finding of guilt. *Id.*

■ Here, in order to make a submissible case for second degree murder, the state was required to show that appellant knowingly caused the deaths of Sergeant Leach and David Biggers. § 565.021.1(1), RSMo 1986.[5] Submissibility on the mental element of knowledge entailed showing that appellant knew or was aware that his conduct was causing or was practically certain to cause the deaths of Sergeant Leach and David Biggers. MAI–CR 3d 313.04; § 562.016.3(2). One who acts "knowingly" does not necessarily desire by his conduct to cause death; rather he is aware that his conduct is practically certain to cause death. *State v. Johnston*, 868 S.W.2d 226, 228 (Mo.App.1994). In showing the requisite mental state, the state need only establish that appellant must have known that death was practically certain to follow from his conduct. *State v. Johnston*, 868 S.W.2d at 228; *State v. Harris*, 825 S.W.2d 644, 647 (Mo.App.1992). Proving that appellant infallibly knew that death would follow is not required. *State v. Johnston*, 868 S.W.2d at 228.

■ Since direct evidence of a particular culpable mental state is seldom available, proof of the mental state usually rests on circumstantial evidence and permissible inferences. *Id.* The state may establish the mental element by evidence of and inferences from appellant's conduct before the act, the act itself, and the appellant's conduct after the act. *State v. Johnson*, 770 S.W.2d 263, 267 (Mo.App.1989).

In the case at bar, contrary to appellant's assertion, both direct and circumstantial evidence established that appellant acted "knowingly." As mentioned above, the area in Westport where appellant struck the victims with his car was "[v]ery well lit" and there was a sign on the barricade that read, "Road Closed." The barricades were "very large" and were painted with fluorescent orange paint "that sticks out." Flashing yellow lights were attached to the top of the barricades. Appellant had frequented Westport and was a "semi-regular" at the Lone Star. In fact, appellant testified that he had been at Westport the previous Friday.

The evidence shows that appellant drove the Monte Carlo out of the parking lot next to Chili's, he parked the Monte Carlo facing east toward the barricades. He parked there for ten to fifteen minutes and "seconds" after Officer Laningham and Sergeant Leach returned to their barricades, the appellant's car began "creeping" toward them. A witness testified that appellant stuck his hand out the window and shouted "Rodney King." Several people in the crowd "shouted back" angrily. Appellant, who had a "very serious look on his face," stepped on the gas, "like somebody racing," causing his tires to squeal, and headed directly for the barricades at a speed of between fifty and sixty miles an hour. Officer Laningham testified that the Monte Carlo came "straight for us" at a high rate of speed. Witnesses testified that appellant never applied the brakes and never took evasive action. In fact, one witness testified that "if anything, appellant was accelerating."

---

4. If the evidence is insufficient to sustain appellant's convictions on the two counts of murder in the second degree, then the evidence would also be insufficient to support the convictions on the two counts of armed criminal action. The reason is that a motor vehicle is not a "dangerous instrument" for the purposes of § 571.015 unless

it is "being used with a purpose to cause death or serious injury." *State v. Pogue*, 851 S.W.2d 702, 706–07 (Mo.App.1993).

5. All sectional references are to Revised Statutes of Missouri, 1986, unless otherwise indicated.

The evidence further shows that after appellant struck the victims with the car, he was in control of the vehicle and did not appear to be driving in an erratic manner. Appellant even maneuvered around people who were walking in the street.

Appellant drove away from the scene and subsequently crashed the Monte Carlo. He was taken to Truman Medical Center. As mentioned above, Michael Reizer, who was injured by appellant's actions, was also being treated there for injuries. While strapped to a backboard gurney, Reizer heard someone say, "two or three years for manslaughter. That's all I'll get for killing the cop." The speaker kept repeating these words for the next two or three minutes. Reizer said he could not see the speaker, but "[he] was loud and obnoxious and [using] lots of profanity." Sergeant Leach was the only officer killed that night. It can certainly be inferred that appellant was the speaker of these statements.

■■■ This evidence was sufficient for the state to make a submissible case that appellant had the requisite culpable mental state to be guilty of second degree murder. The state's evidence overwhelmingly demonstrated that the appellant knowingly drove at a high rate of speed through a lighted barricade. This court must conclude that a person who drives an automobile weighing 3800 pounds at between fifty and sixty miles per hour through a lighted barricade into a crowd of people, without braking or taking evasive action, is engaging in conduct that is more than reckless. It is knowingly. This is because when a person commits an assault with an instrumentality in a manner likely to produce death or serious physical injury, and death or physical injury results, it is presumed that he intended the natural consequences of his actions. *State v. Hamlett,* 756 S.W.2d 197, 200–01 (Mo.App.1988). We conclude that evidence existed sufficient to persuade any reasonable juror beyond a reasonable doubt that appellant knew or was aware that his conduct was practically certain to cause the deaths of Sergeant Leach and David Biggers.

Appellant's first point is denied.

## II

■■■ In his second point, appellant contends that the trial court improperly rejected his proffered instruction on the lesser included offense of involuntary manslaughter. We disagree.

■■■ A trial court is not obligated to instruct on a lesser included offense unless the evidence establishes a basis for acquittal of the greater offense and conviction of the lesser included offense. § 556.046.2; *State v. Stepter,* 794 S.W.2d 649, 652 (Mo. banc 1990). The question is whether the evidence, in fact or by inference, provides a *basis* for *both* an acquittal of the greater offense and a conviction of the lesser offense. *State v. Stepter,* 794 S.W.2d at 652. To determine the evidentiary basis for acquittal, a defendant cannot eliminate undisputed facts. There must be an evidentiary basis logically permitting an operative fact to be disregarded. *State v. Olson,* 636 S.W.2d 318, 321 (Mo. banc 1982).

A person commits the crime of involuntary manslaughter if he "recklessly" causes the death of another. § 565.024.1(1). A person acts "recklessly" when "he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4. Therefore, "recklessness ... involves conscious risk creation. It resembles knowingly in that a state of awareness is involved, but the awareness is of risk, that is of a probability less than a substantial certainty." *State v. Harris,* 825 S.W.2d at 647–48.

Involuntary manslaughter caused by recklessness is a lesser included offense of murder, second degree. § 565.025.2(2)(b). Appellant contends "there is evidence in the case which would arguably support a finding of not guilty of Murder in the Second Degree, and Guilty of Involuntary Manslaughter." However, appellant is mistaken because there is no evidence in the record, from any source, that he acted "recklessly" in killing Sergeant Leach and David Biggers. All of the evidence, as stated in the first point, is that he acted intentionally. *See*

*State v. Beatty,* 849 S.W.2d 56, 60 (Mo.App. 1993). Therefore, he was not entitled to an instruction on involuntary manslaughter.

Appellant's second point is denied.

### III

██ In appellant's third point, he contends that the trial court erred in overruling his objection to the prosecutor's remarks during the rebuttal portion of the state's closing argument. The prosecutor's statement of which appellant complains is, "And then they talked about when Mr. Smith had this incident with Officer Poletis. They brought it out of Poletis. And what did Poletis say? He said, 'It looks like him, it resembles him,' that's all. Why bring up reports of something that—he brought it out not us. Let him bring in the reports to show something different." These remarks were made in response to appellant's closing argument in which he made references to Officer Poletis' police report involving an incident in Westport with a person who resembled appellant and the fact that appellant had never received the police report. Appellant's objection was overruled and he now argues that "the prosecutor knowingly, falsely, implied by his argument that the defendant was afraid to use the report because it would bolster the prosecution's contentions that defendant was a Westport regular, and troublemaker, which bore on the contention that his actions were knowing and intentional."

██ The trial court has broad discretion in ruling on objections to closing arguments and wide latitude is accorded counsel in their summations. *State v. Williams,* 849 S.W.2d 575, 579 (Mo.App.1993). The trial court's ruling will be reversed only when an abuse of discretion has occurred. *State v. Pratt,* 858 S.W.2d 291, 292 (Mo.App.1993). Furthermore, when the complained of remarks occur in the rebuttal portion of the state's argument, the trial court may consider whether the comments were invited. *Id.* The state may go further by way of retaliation in answering the argument of the defendant than would be normally allowed. *Id.* A conviction will only be reversed on the basis of improper argument if it is established that counsel's improper comments had a decisive effect on the jury's verdict. *State v. Lumpkin,* 850 S.W.2d 388, 393 (Mo.App.1993).

In the case at bar, the prosecutor's remarks were made in response to appellant's comments concerning the state's alleged failure to provide a police report. The trial court was in the best position to decide what the implications of the remarks were and whether they were proper rebuttal. *State v. Williams,* 849 S.W.2d at 579. Furthermore, when the state's comments are reviewed in the context of its entire argument, it is clear that the prosecutor was emphasizing how the witnesses against appellant had no reason to lie and in fact, some witnesses including Officer Poletis, did not positively identify appellant as the driver but only stated that the appellant resembled the driver. *See State v. Bragg,* 867 S.W.2d 284, 292 (Mo.App.1993).

In addition, contrary to appellant's assertion that the prosecution was attempting to show that appellant "was afraid to use the report because it would bolster the prosecution's contentions that defendant was a Westport regular, and troublemaker," Officer Poletis' testimony was that appellant was not involved in the incident upon which the police report in question was based. Therefore, appellant's name would not have appeared in the police report. In any event, two other witnesses established that appellant was a Westport regular and a "semi-regular" at the Lone Star. Thus, the trial court did not abuse its discretion.

Appellant's third point is denied.

### IV

██ In appellant's fourth and final point, he claims that the trial court erred in submitting the "verdict directing instructions on armed criminal action, because they each contained a definition of 'dangerous instrument' that did not require the jury to find that the automobile was used with the intent and motive to cause death or serious harm to a person." Specifically, appellant argues that "an automobile is a dangerous instrument only where it is used with the intent and motive to cause death or serious harm to a person." Therefore, appellant contends that because the verdict directing instruc-

tions do not submit such motive and intent, MAI–CR 3d 332.02 "does not state the substantive law for cases where an automobile" as "alleged to be a dangerous instrument, and was not an 'applicable' MAI–CR Instruction in this case."

Appellant's argument must fail. Both verdict directing instructions on armed criminal action precisely tracked MAI–CR 3d 332.02, the pattern instruction for armed criminal action, § 571.015. In addition, both instructions accurately rescripted the definition of "dangerous instrument" contained in the pattern instruction. Furthermore, the definition of "dangerous instrument" contained in the pattern instruction is the exact same definition contained in § 556.061(9) RSMo Cum Supp.1993.

It is well settled that when there is an MAI–CR instruction applicable under the law and the Notes on Use, that instruction must be given, as written, to the exclusion of any other instruction. *State v. Bragg,* 867 S.W.2d at 294. In the case at bar, there was an applicable MAI–CR instruction. Therefore, the trial court was required to give this instruction and it was not error to do so.

Appellant's fourth and final point is denied.

Judgment affirmed.

All concur.