STATE of Missouri, Respondent,

v.

James Wilson CHAMBERS, Appellant.

No. 74525.

Supreme Court of Missouri,
En Banc.

Dec. 20, 1994.

As Modified on Denial of Rehearing
Jan. 24, 1995.

William J. Swift, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

BENTON, Judge.

The jury convicted James Wilson Chambers of capital murder, and assessed the punishment as death; the circuit court imposed the death sentence. Two earlier convictions for the same murder have been reversed. *State v. Chambers,* 671 S.W.2d 781 (Mo. banc 1984); *Chambers v. Armontrout,* 885 F.2d 1318 (8th Cir.1989), *aff'd en banc,* 907 F.2d 825 (8th Cir.), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990). Chambers filed a motion for post-conviction relief under Rule 29.15. In a consolidated appeal, Chambers raises 29 points of error. This Court affirms.

## I.

This Court reviews the facts in the light most favorable to the verdict. *State v. Shurn,* 866 S.W.2d 447, 455 (Mo. banc 1993), *cert. denied,* — U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

On May 29, 1982, Jerry Oestricker was in a bar. Heading for the restroom, he bumped into a member of the Turner family; an argument ensued. After the bar owner was summoned from home, he asked Oestricker and the Turners to leave. The Turners did, but Oestricker did not.

About an hour later, Chambers arrived at the bar with one of the Turners and two other people. Those two stayed in the car, parked facing the road. Chambers carried a .38 caliber revolver.

Chambers and Oestricker argued. The bar owner told them to leave. Chambers started to leave, then turned and said to Oestricker: "Come on out, you motherfucker. We'll settle this outside." Oestricker followed Chambers outside.

Within seconds after both exited, people in the bar heard a gunshot. Chambers then repeatedly hit Oestricker (who had been shot in the heart) in the face with a gun. Chambers dragged Oestricker out of the doorway and shouted into the bar: "The rest of you motherfuckers want some of this?" Chambers then rode off, in the waiting car. Oestricker died of a gunshot wound.

## II. Preliminary Issues

### A. Jurisdiction

Chambers argues that the state failed to give notice of its intent to retry him and did not actually retry him within the deadlines set by the Eighth Circuit in reversing his conviction. He further argues that these delays violated his rights to due process and freedom from cruel and unusual punishment, which in turn deprive this Court of jurisdiction.

On November 5, 1990, the Eighth Circuit reversed Chambers' conviction and directed the federal district court to order the state (1) either to retry Chambers within 120 days or to free him from custody, and (2) to notify the federal courts of the state's intent within 45 days. On November 9, the federal district court issued the required order.

On November 13, retrial was set for February 4, 1991 (less than 120 days after November 5). Before the retrial, Chambers moved for changes of judge and venue, thus tolling the 120–day retrial period. On December 26, 1990, the state notified the federal courts that it intended to retry Chambers and that he had been transferred from state custody to a local jail as a pretrial detainee.

■ Chambers raises three claims. First, Chambers argues that the state violated the Eighth Circuit's mandate by not retrying him until October 1991. Twice in 1991, the federal district court extended the time for retrial, and Chambers was retried before the second extension expired. The Eighth Circuit ruled that the district court did not err in granting these extensions. *Chambers v. Armontrout*, 16 F.3d 257, 261 n. 2 (8th Cir.1994). It interpreted its own mandate not to limit the state's power to retry Chambers, but to require that if Chambers were not retried in 120 days the state "would have to treat the petitioner 'not as someone in its custody pursuant to a death sentence, but as an unsentenced person.'" *Id., quoting Moore v. Zant,* 972 F.2d 318, 320 (11th Cir.1992) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 1650, 123 L.Ed.2d 271 (1993). The Eighth Circuit noted that Chambers had, in fact, been released by the Department of Corrections to a local jail within the 120–day period, and that the delays in retrying him were at least partly attributable to the defense. *Id.* This Court will follow the Eighth Circuit's interpretation of its own mandate.

■ Second, Chambers argues—for the first time on appeal—that the state filed late the notice of intent to retry. Chambers is correct that the notice was filed six days late, but fails to show any prejudice from the late filing. *Cf. Doggett v. United States,* —— U.S. ——, ——, n. 1, 112 S.Ct. 2686, 2691, n. 1, 120 L.Ed.2d 520 (1992) (prejudice not presumed for speedy trial purposes until delay is one year). Moreover, Chambers cites no authority that the late filing deprives this Court of jurisdiction or the state of the right to retry him.

■ Third, Chambers claims ineffective assistance of counsel because trial counsel did not (1) seek his release when the initial retrial period lapsed, nor (2) appeal the extensions of time granted by the federal district court. Defense counsel testified they needed additional time (beyond the original retrial period) to prepare for trial. In fact, months after the original retrial period lapsed, they requested further continuances, alleging they were still not prepared. *See section II.B. below.* Reasonable trial counsel do not seek trial dates for which they know they are not prepared.

Chambers' challenge to jurisdiction is denied. This Court has jurisdiction. *Mo. Const. art. V, § 3.*

### B. Continuances

Chambers claims that the trial court abused its discretion and violated the United States and Missouri constitutions by denying a continuance to permit additional preparation. The trial court did grant Chambers a five-week continuance before denying the subsequent motion.

■ The decision to grant or deny a continuance is within the sound discretion of the trial court. *State v. Schaal,* 806 S.W.2d 659, 666 (Mo. banc 1991), *cert. denied,* 502 U.S. 1075, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992). A very strong showing is required to prove abuse of that discretion; the party

requesting the continuance must show prejudice. *Id., citing State v. Nave,* 694 S.W.2d 729, 735 (Mo. banc 1985), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986). Inadequate preparation does not justify a continuance where counsel had ample opportunity to prepare. *Id.*

■ Here, trial counsel had ample opportunity to prepare. Counsel entered appearances December 13, 1990; the trial began October 28, 1991. Chambers received a five-week continuance to October 28 in order to permit additional preparation. Moreover, two months before that continuance was granted, Chambers filed for habeas corpus, seeking release because the state was too slow in retrying him after the Eighth Circuit's remand. *See Chambers v. Armontrout,* 16 F.3d 257 (8th Cir.1994); *see also section II.A., above.* The federal district court ordered the state to retry Chambers by November 5, 1991, or free him from custody. On this record, the trial court did not abuse its discretion nor violate the constitutions in denying Chambers a second continuance.

### III. Jury Issues

#### A. Alleged Juror Misconduct

Chambers seeks reversal, or alternatively a second hearing, alleging that jurors learned that he had been previously convicted and sentenced to death for Oestricker's murder.

The trial court conducted a hearing on Chambers' allegations (contained in his motion for new trial). Witness Rector, while himself in jail, testified that Overton, an inmate in the next cell, said he had worked at the hotel where the jury was sequestered and had overheard jurors saying they knew Chambers had been sentenced to death for Oestricker's murder, and that the state's evidence supported only a manslaughter charge.

Overton's sworn testimony directly contradicted Rector: he testified that he had little to do with the jury, had not heard them discuss anything about the case, and denied telling Rector anything about the jury other than that it stayed at the hotel where he worked. The motion court denied Chambers' motion, stating: "I find the testimony of Witness Overton credible and that of Witness Rector not credible."

■ Chambers argues that the alleged juror misconduct violated constitutional rights and *§ 547.020(2) RSMo 1986,* which permits a new trial when the jury "has been guilty of any misconduct tending to prevent a fair and due consideration of the case." Juror misconduct during trial requires a new trial "unless the state affirmatively shows that the jurors were not subject to improper influences." *State v. Babb,* 680 S.W.2d 150, 151 (Mo. banc 1984), *quoting State v. Dodson,* 338 Mo. 846, 92 S.W.2d 614, 615 (1936). Juror misconduct during deliberations creates a rebuttable presumption of prejudice, which can be overcome with evidence. *Babb,* 680 S.W.2d at 152. After hearing evidence, the motion court's decision is reviewable only for abuse of discretion. *Id.*

■ The motion court heard the evidence, evaluated credibility, and believed Overton, not Rector. On this record, the state met its burden, and the motion court did not abuse discretion in denying the motion for new trial.

■ Chambers argues alternatively that *State v. Harvey,* 730 S.W.2d 271 (Mo.App. 1987), required the motion court to hear testimony from jurors before denying the motion. *Harvey* does not always require juror testimony once misconduct is alleged. In fact, such a requirement is inconsistent with *Babb,* which held that jurors *may* testify at the hearing, but not that they *must* be called. *Babb,* 680 S.W.2d at 152. Point denied.

#### B. Non-MAI Cautionary Instruction

■ Chambers claims that before death qualification, the trial court should have submitted a non-MAI cautionary instruction that death qualification questions are mandatory and do not imply guilt. The trial court read to the jury MAI–CR3d 300.02, stating that the charge of any offense creates no inference that any offense was committed nor that the defendant is guilty, and that the defendant is presumed innocent until found guilty. This Court has repeatedly rejected claims for additional cautionary instructions beyond MAI–CR3d 300.02. *State v. Parker,* 886

S.W.2d 908, 921 (Mo. banc 1994); *State v. Kilgore*, 771 S.W.2d 57, 63 (Mo. banc), *cert. denied*, 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989). Point denied.

### C. Individual Voir Dire

Chambers argues that the trial court erred in denying his motion for individual voir dire. Control of voir dire is within the discretion of the trial court; only abuse of discretion and likely injury justify reversal. *State v. Bannister*, 680 S.W.2d 141, 145 (Mo. banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). Individual voir dire is not normally required. *State v. McMillin*, 783 S.W.2d 82, 94–95 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Review of the record reveals no abuse of discretion nor any injury from the actual voir dire. Point denied.

### D. Signing Death Verdict

Chambers asserts abuse of discretion in the trial court's permitting questions asking jurors whether they could sign a death verdict if selected as foreperson. Chambers argues that such questions improperly seek a commitment. This Court has previously rejected this claim, as Chambers concedes. *See Clemmons v. State*, 785 S.W.2d 524, 529 (Mo. banc), *cert. denied*, 498 U.S. 882, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990); *State v. McMillin*, 783 S.W.2d 82, 91–92 (Mo. banc), *cert. denied*, 498 U.S. 994, 111 S.Ct. 543, 112 L.Ed.2d 552 (1990). Point denied.

### E. Second Jury or Two–Stage Voir Dire

Chambers argues that the trial court violated constitutional rights by denying motions to impanel a separate penalty-phase jury and to reopen voir dire. Chambers contends that a second jury or two-stage voir dire would have "furthered the goal of insuring reliability in determining the appropriate punishment" and was particularly important here because counsel was "deficient" (though not legally ineffective) in failing to ask questions about prior jury service in criminal cases.

This Court has rejected any constitutional right to a separate penalty-phase jury. *State v. Whitfield*, 837 S.W.2d 503, 509 (Mo. banc 1992). The trial court has discretion to control voir dire and will be upheld absent abuse of discretion and likely injury. *State v. Bannister*, 680 S.W.2d at 145. Chambers' general assertions of increased reliability and attorney deficiency fail to show abuse of discretion or likely injury. Point denied.

### IV. Guilt Phase

### A. Opening Statement

Chambers contends that the trial court violated constitutional rights by overruling his objection to this part of the state's opening statement:

> Basically, our evidence will show that Chambers entered that bar, went over and purely picked a fight with Jerry Lee Oestricker.

Chambers claims that this statement was not an outline of evidence but instead impermissible argument because it "cast Mr. Chambers in the role of 'the initial aggressor', which made self-defense unavailable to him."

References during opening statement that are good faith expectations of the evidence are not grounds for reversal. *State v. Harris*, 870 S.W.2d 798, 809 (Mo. banc), *cert. denied*, —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Several witnesses testified that Chambers was the aggressor; the quoted part of the state's opening statement outlined this evidence. Thus, the trial court did not err in overruling Chambers' objection.

### B. Defendant's Out–of–Court Statement

Chambers argues that the trial court erred in excluding—as hearsay—testimony from Officer Hanna that Chambers said, two days after the murder, that he shot Oestricker in self-defense.

A hearsay statement is any out-of-court statement offered to prove the truth of the matter asserted. *State v. Shurn*, 866 S.W.2d 447, 457 (Mo. banc 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 118, 130

L.Ed.2d 64 (1994). Hearsay is generally not admissible. *State v. Sweet*, 796 S.W.2d 607, 614 (Mo. banc 1990), *cert. denied*, 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991). Chambers' out-of-court statement that he acted in self-defense was clearly offered to prove that he did, in fact, act in self-defense. The trial court correctly ruled that the statement was inadmissible hearsay.

Chambers makes several arguments, none of which directly challenge the trial court's hearsay ruling. First, he cites *State v. Debler*, 856 S.W.2d 641, 648 (Mo. banc 1993), and *State v. Troupe*, 863 S.W.2d 633, 637 (Mo.App.1993), for the theory that his statement is "necessary to present a complete picture of the crime." The cited page in *Debler* held that an out-of-court statement was inadmissible hearsay, but admitting it was harmless error. *Troupe* held that "the complete picture of the crime" is relevant, but not that the picture may be proved by inadmissible hearsay.

Chambers next claims that his hearsay statement is admissible because once a party injects an issue into the case, the opponent may introduce otherwise inadmissible evidence to counter it, citing *State v. Lingar*, 726 S.W.2d 728, 735 (Mo. banc), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). *Lingar* holds that evidence initially inadmissible (because irrelevant) may become relevant when the opponent injects an issue. Here, however, Chambers' statements were excluded not because irrelevant, but because they were hearsay. Thus, *Lingar* is inapposite.

Chambers also contends that *State v. Waller*, 816 S.W.2d 212 (Mo. banc 1991), authorizes hearsay statements to show his state of mind on self-defense. *Waller* held that in a self-defense case, "the trial court may permit a defendant to introduce evidence of the victim's prior specific acts of violence" under certain conditions. *Id.* at 216. Chambers' hearsay was not evidence of prior specific acts of violence by Oestricker, so *Waller* does not apply.

■■■■ Finally, Chambers invokes *State v. Beatty*, 849 S.W.2d 56, 59 (Mo.App.1993), which held that "relevant exculpatory statements made during a confession are admissi-

ble if other portions of the confession are used by the prosecution." Chambers argues that his hearsay statement is admissible because the state introduced a different statement Chambers made to police (36 hours before the one at issue) denying any involvement in the murder. Chambers now attempts to link these two statements into one "confession" to invoke *Beatty*.

Chambers' argument fails. The two statements were distinct and not part of one confession. Indeed, neither statement was a confession at all; the first denied any involvement and the second advanced a complete defense. At most, *Beatty* requires that the full first statement be in evidence; it was, as Chambers concedes.

In sum, Chambers' second statement was hearsay not admissible under any exception. None of his several theories on appeal show trial court error. Point denied.

### C. Norma Ieppert's Testimony

Norma Ieppert, the bartender, testified about an argument approximately an hour before the murder between the victim and the Turner family, friends of Chambers:

> The mother [of the Turner family] kept the argument going. She wanted her son and the daughter to take up for their brother, and she just kept it going and saying, you know, "They're blood kin. You're not going to take up for your own blood kin?"

Chambers contends that Ieppert's quote of Turner was hearsay, not admissible under any exception, and violated his rights to due process, confrontation, and freedom from cruel and unusual punishment. The trial court overruled Chambers' hearsay objection (made before Ieppert gave the quoted testimony) because it was not offered for the truth of the matter asserted, but "to show that the statements were being made."

■■■■ Chambers did not preserve constitutional claims about Ieppert's testimony because his only objection was on hearsay grounds. To preserve appellate review, constitutional claims must be made at the first opportunity, with citations to specific consti-

tutional sections. *State v. Parker,* 886 S.W.2d at 924 (Mo. banc 1994); *State v. Flynn,* 519 S.W.2d 10, 12 (Mo.1975). A hearsay objection does not preserve constitutional claims relating to the same testimony. *Parker,* 886 S.W.2d at 925. This Court's review is thus discretionary, for plain error causing manifest injustice or miscarriage of justice. *Rule 30.20.*

■ A hearsay statement is any out-of-court statement used to prove the truth of the matter asserted. *State v. Shurn,* 866 S.W.2d 447, 457 (Mo. banc 1993), *cert. denied,* — U.S. —, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Here, the trial court expressly permitted Turner's statements for a reason other than the truth of the matter asserted: "to show that the statements were being made." Review of the entire record reveals that the trial court admitted the statement to show Turner's state-of-mind: anger toward Oestricker. Because Turner's statement was not used to prove the truth of the matter asserted, it is not hearsay and the trial court committed no error in overruling the hearsay objection.

■ Since Turner's statement was not hearsay, it is admissible if relevant. *State v. Shurn,* 866 S.W.2d at 457. Evidence is relevant if it logically tends to prove a fact in issue. *Id.*

■ The state's theory of the case was that Chambers went to the bar intending to retaliate against Oestricker on behalf of his friends, the Turners. According to other evidence, after the testimony quoted above but before the murder, Chambers discussed the Turner–Oestricker argument with the Turners. Turner's anger and desire for retaliation—as evidenced by saying "take up for your blood kin"—was thus relevant to Chambers' motive. In addition, other evidence—unobjected to by Chambers—established the argument between the Turners and Oestricker, the Turners' resulting anger, and Chambers' presence at the Turners' house just before he went to the bar. Point denied.

■ Chambers also contends that the trial court violated constitutional rights by permitting the prosecutor to argue the quoted testimony at closing. Chambers' failure to object waives this claim. *State v. Wise,* 879 S.W.2d 494, 515 (Mo. banc 1994). Discretionary review reveals no plain error causing manifest injustice or miscarriage of justice. *See Rule 30.20*

### D. Reference to "St. Mary's"

■ Chambers argues that the trial court erred in admitting evidence—a tape recording and transcript—of this statement to police:

Chambers: I got out of St. Mary's around....

Lt. Nelson: Go ahead.

Chambers: .... around one or two o'clock ... got out of St. Mary's around one or two o'clock. They usually let us out around 4:30, except on holidays, sometimes let us out a few hours early....

The jury heard no evidence defining "St. Mary's." St. Mary's is, in fact, a Missouri community-release facility in St. Louis, where Chambers was housed in May 1982. Chambers asserts that the references to St. Mary's constituted inadmissible evidence of other crimes. The trial court admitted the quoted statement over his objection, because the jury was never told that St. Mary's was a corrections institution. Appellate review of admission of evidence of uncharged crimes is for abuse of discretion. *See State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993).

■ St. Mary's is a common name for churches, hospitals and schools. Chambers' statement, "They usually let us out," does not imply a penal institution. In any event, Chambers shows no prejudice from two brief references to St. Mary's. On this record, the trial court did not abuse its discretion in admitting the statement. Point denied.

### E. Autopsy Photograph

■ Chambers claims that the trial court erred in denying a mistrial because a sticker was removed from an autopsy photograph. The trial court ordered the state to cover with an exhibit sticker the (apparent) blood or feces in the photograph. After the jurors viewed the photograph, Chambers' counsel noticed that the sticker was gone, but

no one knew how the sticker was removed. The trial court denied Chambers' motion for a mistrial, finding:

> In my opinion, that's not so inflammatory as to cause the remedy of a mistrial. Now, this man is obviously graveyard dead and the jury has had an opportunity to see him dead in several poses, all of which exhibit the extent and nature of the wounds; and the fact that a person exhibits another characteristic of a dead person I suppose is no more gruesome than the crime itself.

A mistrial is a drastic remedy, granted only in extraordinary circumstances. *State v. Feltrop*, 803 S.W.2d 1, 9 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Because the trial court observes the trial and the impact of any error, appellate review is for abuse of discretion. *Id.* Moreover, the trial court has broad discretion to determine issues regarding photographic exhibits. *State v. Isa*, 850 S.W.2d 876, 890 (Mo. banc 1993).

Here, the trial court did not abuse its discretion. Even unredacted, the photo is not particularly gruesome. There is no evidence establishing who removed the sticker, let alone that removal was intentional. On this record, the trial court did not abuse its discretion in denying a mistrial.

Chambers also moves this Court to strike parts of the state's brief responding to this argument because the state included in the record on appeal autopsy photos not admitted at trial. This Court previously granted Chambers' motion to strike those photos from the record. The motion to strike pages 14 and 69 through 71 of the state's brief is denied.

### F. Reasonable Doubt Instructions

Chambers asserts that Instruction 4—identical to MAI–CR3d 302.04—and Instruction 14—identical to MAI–CR3d 313.30—violate due process. The challenged language reads: "proof beyond a reasonable doubt is proof that leaves you firmly convinced...." This claim is again rejected. *State v. Harris*, 870 S.W.2d 798, 811 (Mo. banc), *cert. denied*, —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

### G. Second Degree Murder Instruction

Chambers contends that Instruction 6 is unconstitutional because it encourages a conviction for the greater offense. Chambers did not object, and concedes that review is for plain error. The same challenge to identical language was rejected in *State v. Parker*, 886 S.W.2d at 923 (Mo. banc 1994), and *State v. Wise*, 879 S.W.2d 494, 517 (Mo. banc 1994).

Chambers also argues that the prosecutor "unduly emphasized the capital murder option" in argument referencing Instruction 6. Chambers did not object. Review of plain error claims in closing argument is limited. *State v. Wise*, 879 S.W.2d at 516. The argument at issue tracked the language of Instruction 6; the trial court thus committed no error, plain or otherwise.

### H. Involuntary Intoxication Instruction

Chambers claims that the trial court erred in submitting Instruction 9 on involuntary intoxication. Chambers himself offered Instruction 9, and may not turn around and challenge it. *State v. McMillin*, 783 S.W.2d 82, 97 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Nonetheless, this Court, in its discretion, reviews for plain error causing manifest injustice or miscarriage of justice. *Rule 30.20*.

In 1982, an intoxicated person was "criminally responsible for conduct unless [the intoxication] negatives the existence of the mental states of purpose or knowledge when such mental states are elements of the offense charged or of an included offense." *§ 562.076 RSMo 1978*. Instruction 9 reflected that law:

> An intoxicated condition will not relieve a person of criminal responsibility unless his intoxicated condition prevented him from acting purposely.
>
> Evidence that the defendant was or was not in an intoxicated condition may be considered by you in determining whether the defendant acted purposely as required in Instruction No. 5. If you have a reasonable doubt that the defendant acted pur-

posely as required by Instruction No. 5, you must find the defendant not guilty of that offense submitted in that instruction.

■ Chambers' first attack is that Instruction 9 unconstitutionally shifts the burden of proving the required mental state from the state to the defendant. As he notes, this Court held that a different involuntary intoxication instruction (based on 1984 amendments to § 562.076) impermissibly shifted the burden. *State v. Erwin*, 848 S.W.2d 476, 481–84 (Mo. banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993).

Chambers' attack fails because *Erwin* addresses only MAI–CR3d 310.50 (not the instruction at issue here) and applies only to cases tried in the future or on direct appeal where the issue was preserved. *Erwin*, 848 S.W.2d at 484. Chambers was tried before *Erwin* and concedes he did not preserve the error.

Moreover, the rationale of *Erwin* does not apply to Instruction 9. The instruction struck down in *Erwin* read:

You are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct.

The constitutional issue was "whether a reasonable likelihood exists that the jury understands the instruction to relieve the state of its burden of proof as to a statutory element." *Id.* at 483. This Court concluded that the *Erwin* instruction "creates a reasonable likelihood that the jury would believe that if defendant was intoxicated, he was criminally responsible regardless of his state of mind." *Id.*

Instruction 9 contains language—not in the *Erwin* instruction—preventing any reasonable belief that intoxication eliminates state of mind as an element. The additional phrase, "unless his intoxicated condition prevented him from acting purposely," makes clear to the jury that intoxication preventing purposeful action would negate intent. Thus, the constitutional infirmity in the *Erwin* instruction is not present in Instruction 9.

■ Chambers argues alternatively that trial counsel was ineffective for failing to preserve the claim that Instruction 9 was unconstitutional. Instruction 9 is not unconstitutional, and counsel is not ineffective in failing to preserve losing arguments. Moreover, trial counsel's performance is evaluated by reference to the law existing at the time of trial; failure to predict a change in law is not ineffective assistance. *State v. Parker*, 886 S.W.2d at 923 (Mo. banc 1994), *citing Johnson v. Armontrout*, 923 F.2d 107, 108 (8th Cir.), *cert. denied*, 502 U.S. 831, 112 S.Ct. 106, 116 L.Ed.2d 75 (1991). At the time of Chambers' third trial, both Instruction 9 and the *Erwin* instruction were constitutional. Point denied.

## V. Penalty Phase

### A. Aggravating Evidence and Argument

Chambers contends that the trial court plainly erred when it allowed, without objection, the state to present evidence (and argue it in closing) of (1) his violent behavior less than an hour before the murder, and (2) his statements several days after the murder that he regretted never having the opportunity to kill a police officer. Chambers asserts that this evidence was irrelevant to any aggravator submitted to the jury and was, therefore, inadmissible under *State v. Debler*, 856 S.W.2d 641, 656–57 (Mo. banc 1993). Since there was no objection, review is discretionary for plain error. *Rule 30.20*.

■ The challenged evidence involved two incidents. One occurred in a convenience store less than an hour before Oestricker was murdered. Chambers confronted the clerk, and cursed her. When she reached for the telephone to call police, he grabbed the phone, slammed it down, and said loudly, he could "knock [the clerks'] fucking heads off and that nobody could protect [them]." Chambers left at the urging of a companion.

The other incident occurred after the murder. Chambers said to his probation and parole officer that one of his regrets in life was never having had the opportunity to kill a police officer.

■ At penalty phase, the state may generally introduce any evidence regarding the defendant's character. *State v. Six*, 805

S.W.2d 159, 166–67 (Mo. banc), *cert. denied,* 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). Because of the importance of the death penalty decision, the sentencer is entitled to any evidence that assists that decision. *State v. Debler,* 856 S.W.2d 641, 656 (Mo. banc 1993). Both incidents evidenced Chambers' character, and are therefore admissible.

Chambers invokes *Debler,* where this Court held that extensive evidence of serious unconvicted crime is inadmissible where the state provides no timely notice that it intends to introduce the evidence. *Id.* at 657. Chambers, in fact, argues that his behavior in the convenience store and statement to the probation officer were not crimes. Since evidence of both incidents was introduced at previous trials, Chambers was clearly on notice that the state would introduce it. Thus, the trial court committed no plain error in permitting the testimony. *Id.*

■ Chambers' alternative attack is that the testimony was inadmissible evidence of bad character and future dangerousness. Character and future dangerousness evidence is admissible at penalty phase. *See Tuilaepa v. California,* — U.S. —, —, 114 S.Ct. 2630, 2635, 129 L.Ed.2d 750 (1994) (character); *Simmons v. South Carolina,* — U.S. —, —, 114 S.Ct. 2187, 2193, 129 L.Ed.2d 133 (1994) (future dangerousness). Finally, since the evidence that Chambers now challenges was admissible, the trial court committed no plain error in permitting the prosecutor to argue it. *See State v. Wise,* 879 S.W.2d 494, 516 (Mo. banc 1994).

### B. Proposed Legislation Question

Chambers claims that the trial court erred in denying a mistrial when the prosecutor asked the Assistant Director of Adult Correctional Institutions whether proposed legislation would allow parole for those sentenced to life imprisonment (before 50 years have passed). The testimony was:

Q. [by Chambers' lawyer] So a sentence of life without eligibility for parole for fifty years means they're not eligible to receive parole until fifty years have passed; isn't that true?

A. That means that the parole board would take a look at them at the end of fifty years and then determine if they were going to parole.

Q. So that's—they don't even look at them before then, right?

A. No, ma'am.

. . . . .

REDIRECT EXAMINATION BY MR. CALLAHAN

Q. There has been proposed legislation to change that, hasn't there?

Chambers objected; the witness did not answer; the jury was instructed to disregard the question.

Mistrial is a drastic remedy to be used only in extraordinary circumstances. *State v. Feltrop,* 803 S.W.2d 1, 9 (Mo. banc), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). The trial court observes the incident and the impact on the jury, so review is for abuse of discretion. *Id.*

Chambers argues that *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), compels reversal. There, the prosecutor argued at penalty-phase closing that the state supreme court would review any death sentence, thus implicitly minimizing the jury's sense of responsibility. *Id.* at 325–26, 105 S.Ct. at 2637–38. The trial court not only failed to sustain an objection, but "openly agreed" with the prosecutor's remarks, telling the jury that the remarks were "necessary and proper." *Id.* at 339, 105 S.Ct. at 2645. The United States Supreme Court reversed, holding:

[I]t is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere.

*Id.* at 328–29, 105 S.Ct. at 2647.

■ The prosecutor's question here did not violate *Caldwell.* The prosecutor's inquiry about possible legislation did not diminish the jury's responsibility for Chambers' sentence. Moreover, the trial court here—unlike *Caldwell*—*sustained* an objection and instructed the jury to disregard the

question. Denying a mistrial based on one fleeting reference in an unanswered question is not abuse of discretion. *See State v. McDonald*, 661 S.W.2d 497, 505–06 (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985).

◼ Chambers also invokes *Simmons v. South Carolina*, —— U.S. ——, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). There, at penalty-phase closing the prosecutor expressly argued defendant's future dangerousness, stating that the question for the jury was "what to do with [defendant] now that he is in our midst" and urging a death sentence as "a response of society to someone who is a threat" and "an act of self-defense." *Id.* at ——–——, 114 S.Ct. at 2190–91. The Supreme Court held that these arguments were permissible, but that due process required the trial court to grant defendant's request for an instruction that a life imprisonment sentence would be without parole.

Chambers asserts that the prosecutor's question, plus other evidence of *past* actions, injected his *future* dangerousness into issue. The evidence of past actions was properly admitted. *See section V.A. above.* The prosecutor's unanswered question about proposed legislation—which the jury was instructed to disregard—falls far short of the prosecutor's multiple, express references to future dangerousness in *Simmons.* Here, the record is clear that the jury was left with the impression that life imprisonment without parole for fifty years meant precisely that. Thus, the trial court committed no abuse of discretion in denying a mistrial.

### C. Aggravating Circumstances Instruction

Chambers argues that Instruction 17 regarding aggravating circumstances violated the United States and Missouri constitutions:

### INSTRUCTION NO. 17

In determining the punishment to be assessed against defendant for the murder of Jerry Lee Oestricker, you must first unanimously determine whether one or more of the following aggravating circumstances exist:

1. Whether the defendant has a substantial history of serious assaultive convictions.

2. Whether the murder of Jerry Lee Oestricker involved depravity of mind and whether, as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhuman. You can make a determination of depravity of mind only if you find that the defendant inflicted physical pain on Jerry Lee Oestricker and that defendant did so for the purpose of making him suffer before dying, as supported by the evidence.

You are further instructed that the burden rests upon the state to prove at least one of the foregoing circumstances beyond a reasonable doubt. On each circumstance that you find beyond a reasonable doubt, all twelve of you must agree as to the existence of that circumstance.

Therefore, if you do not unanimously find from the evidence beyond a reasonable doubt that at least one of the foregoing circumstances exists, you return a verdict fixing the punishment of the defendant at imprisonment for life by the Division of Corrections without eligibility for probation or parole for fifty years.

◼ Chambers contends the first aggravating circumstance—history of serious assaultive convictions—is unconstitutionally vague. This Court rejected that argument in *State v. Nave*, 694 S.W.2d 729, 738 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986), as Chambers concedes.

Chambers also claims the first aggravator is unconstitutional and inconsistent with statutes because the court, not the jury, determines whether the prior convictions were "serious" and "assaultive." This Court has also rejected these claims. *See State v. Whitfield*, 837 S.W.2d 503, 514 (Mo. banc 1992); *State v. Smith*, 781 S.W.2d 761, 769 (Mo. banc 1989), *vacated*, 495 U.S. 916, 110 S.Ct. 1944, 109 L.Ed.2d 306 (1990), *aff'd on remand*, 790 S.W.2d 241 (Mo. banc), *cert. denied*, 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990).

Chambers next asserts insufficient evidence to establish that his prior convictions were serious and assaultive. The state introduced uncontradicted evidence that Chambers was convicted both of felonious assault for wounding a person with a soda bottle, and of assault with intent to kill with malice aforethought for shooting a gun at a person. These acts were serious and assaultive.

Chambers also attacks the second aggravator—depravity of mind—arguing that it fails to properly limit and channel the sentencer's discretion, and should not have been submitted without a limiting instruction. Both attacks have been rejected by this Court. *State v. Feltrop*, 803 S.W.2d 1, 14–17 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

Chambers next argues that the depravity-of-mind aggravator should not have been submitted because it was unsupported by the evidence, relying on a statement in an earlier dissent that this murder was "an ordinary barroom altercation." *State v. Chambers*, 714 S.W.2d 527, 534 (Mo. banc 1986) (Welliver, J., dissenting). Here, the state introduced evidence that Chambers pistol-whipped Oestricker after shooting him, clearly sufficient to submit depravity of mind. *See State v. Lingar*, 726 S.W.2d 728, 741 (Mo. banc), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). Point denied.

### D. Refusal of Non–MAI Mitigating Circumstance Instruction

Chambers asserts error because the trial court refused his non-MAI Instruction C—listing seven nonstatutory mitigating factors—and instead submitted Instruction 20, similar to MAI–CR3d 313.44. This Court has rejected the claim that listing nonstatutory mitigating factors is constitutionally required. *State v. Parker*, 886 S.W.2d at 928 (Mo. banc 1994); *State v. Wacaser*, 794 S.W.2d 190, 195 (Mo. banc 1990).

### E. Refusal of Other Non–MAI Instructions

Chambers argues that the trial court erred by refusing nine non-MAI instructions (while submitting the applicable MAI–CR instructions). The trial court must give the applicable MAI instruction, to the exclusion of any other instruction. *Rule 28.02(c); State v. Isa*, 850 S.W.2d 876, 902 (Mo. banc 1993). Thus, the trial court's refusal of non-MAI instructions was neither error nor abuse of discretion. Point denied.

## VI. Post–Conviction Relief

### A. Assistance of Trial Counsel

Chambers contends that the motion court erred in denying post-conviction relief for ineffective assistance of trial counsel. To show ineffective assistance, a defendant must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that defendant was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); *State v. Wise*, 879 S.W.2d 494, 524 (Mo. banc 1994). To prove prejudice, the defendant must show a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Shurn*, 866 S.W.2d 447, 468 (Mo. banc 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Trial strategy is not a ground for ineffective assistance of counsel. *Id.*

The motion court found that counsel was not ineffective, so review is limited to determining if that court clearly erred. *Rule 29.15(j); Wise*, 879 S.W.2d at 524. Findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court has the definite impression that a mistake has been made. *Shurn*, 866 S.W.2d at 468–69.

#### 1.

Chambers argues that counsel was ineffective in calling Ken Vaughn because his testimony "completely negated" Chambers' self-defense theory. Vaughn testified that he found a pair of pliers near the victim's body, and that he dropped them when he went outside to help Oestricker. Chambers' self-defense theory was based in part on the assertion that *Oestricker* had

dropped the pliers after using them as a weapon against Chambers.

The motion court denied this claim, finding the decision to call Vaughn "a matter of trial strategy ... well within the bounds of what a competent attorney would have decided." The motion court referenced trial counsel's testimony that she recognized risks to calling Vaughn, but decided to call him after discussion with Chambers. The motion court specifically found: "Vaughn could at least establish the presence of the needle-nosed pliers on the ground near the victim, and this fact was important to the defendant's claim of self-defense."

The record supports the motion court's finding. Vaughn was the only witness mentioning the pliers. Trial counsel testified that she believed she could counter, at closing, Vaughn's assertion that he dropped the pliers. Vaughn gave other testimony helpful to Chambers, such as that Oestricker was drunk and combative. On this record, calling Vaughn was not ineffective assistance of counsel. *See Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc 1992), *cert. denied*, — U.S. ——, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992).

■ Chambers also argues that trial counsel was ineffective in failing to *impeach* Vaughn with a prior conviction and prior inconsistent statement. Impeaching Vaughn would have weakened his testimony helpful to Chambers. Choosing not to impeach one's own witness is not ineffective assistance of counsel.

### 2.

■ Chambers asserts that counsel was ineffective for failing to call three witnesses—Oestricker's former spouse, Russell Humphreys, and Judy Thornton—to testify of Oestricker's reputation for violence. The parties stipulated that Oestricker's former spouse would have testified that they fought during their marriage, but that they divorced seven years before his murder. Thornton testified at the 29.15 hearing that Oestricker had a reputation as a drinker and fighter, but admitted that she had not seen him for six years before the murder. Chambers alleges that Humphreys would have testified that he fought Oestricker the day before the murder, but the only evidence is Chambers' wife's testimony at the 29.15 hearing that she "believed" Humphreys would testify as alleged.

Where self-defense is at issue, the trial court may permit evidence of a prior specific act of violence by the victim if (1) the defendant shows his or her knowledge of the act, (2) other competent evidence raises the self-defense issue, (3) the incident is not too remote in time, and (4) the incident could contribute to the defendant's fear of the victim. *State v. Waller*, 816 S.W.2d 212, 217 (Mo. banc 1991).

■ The proposed evidence is not admissible under *Waller*. Chambers offered no proof that he knew of any of the incidents. Oestricker's former spouse and Thornton only knew of remote incidents six and seven years before the murder. Counsel is not ineffective in deciding not to offer inadmissible evidence.

### 3.

■ Chambers next argues that trial counsel failed to effectively impeach Fred Ieppert with prior inconsistent statements from the two previous trials. The motion court denied this claim, finding cross-examination "adequate and competent," and that:

The court notes that Fred Ieppert was a particularly difficult witness because of his age and hearing problems and care had to be taken so as not to alienate the jury by an overly aggressive cross-examination. Defense counsel did well with what was a difficult situation.

Even under these conditions, the record shows that defense counsel did much to impeach Ieppert. Counsel established that Ieppert drank four beers on the night of the murder, impeached him several times with prior inconsistent testimony, highlighted mistaken direct examination testimony, and challenged Ieppert's memory. The motion court had the benefit of evaluating the effect of cross-examination on the jury. There is no evidence that trial counsel could have exposed additional prior inconsistent statements without alienating the jury.

Chambers also claims that this Court should remand for a hearing to determine if the trial transcript filed in this Court on August 14, 1992, omits part of Ieppert's testimony. This claim was raised in a pro se motion filed October 13, 1992, in circuit court, and included Chambers' assertion that he had notified his attorneys of the alleged error. No motion was filed here, nor does there appear any basis to remand for a hearing. *Rule 30.04(h)*.

#### 4.

Chambers contends that trial counsel was ineffective for failing adequately to prepare witnesses James Jones and Donald Chapman.

#### i.

Chambers makes two claims about Jones: (1) that several telephone interviews with Jones in a Michigan prison were insufficient preparation, and (2) Jones was not furnished with a copy of his prior testimony.

■ First, Chambers offers no definition of what reasonable trial counsel would have done besides interviewing Jones by phone from the Michigan prison. In fact, conducting multiple phone interviews was reasonable, and provides no basis for an ineffective-assistance claim. *Compare Chambers v. Armontrout*, 907 F.2d 825 (8th Cir.) (en banc), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990), *aff'd* 885 F.2d 1318 (8th Cir.1989) (counsel was ineffective by conducting *no* interviews with Jones). Moreover, no evidence suggests that additional phone interviews or personal interviews would have changed the result.

■ As to the second claim, virtually every witness was impeached with prior inconsistent statements from the two previous trials, including some witnesses about whom Chambers raised no ineffective-assistance claim for failure to review prior testimony. Review of the record reveals that the impeachment of Jones was no more damaging than that of other witnesses. Moreover, Chambers articulates no theory how the result would have changed if Jones had reviewed his previous testimony.

#### ii.

■ As to Chapman, Chambers offers only the assertion that "throughout his testimony, the prosecutor examined him about prior statements he did not recall" that "undermined his credibility." Chambers does not show how reasonably competent counsel would have prepared Chapman, nor how a more credible Chapman would have changed the result. Point denied.

#### 5.

Chambers next contends that counsel was ineffective in failing to call Henrietta Turner and Darlene Chambers (Chambers' spouse) at guilt phase.

■ Turner did not testify at the 29.15 hearing, but at deposition testified that she never urged Chambers to hurt or kill Oestricker, that Chambers wanted to borrow a boat on the night of the murder, and that Oestricker challenged her to a fight at the bar before the murder.

Trial counsel did testify at the 29.15 hearing. Counsel had read an investigator's report of an interview with Turner, and decided not to call her because "she was saying things that did not make sense." The motion court found reasonable the judgment that Turner would make a "terrible" witness. This decision regarding trial strategy was not ineffective assistance of counsel.

■ Darlene Chambers testified at the 29.15 hearing that James Chambers was looking for a boat on the night of the murder, and that when he returned without a boat, he looked like he had been in a fight. The motion court found the decision not to call Darlene was not ineffective because her testimony was cumulative and easily impeached with a false alibi statement to police on the night of the murder. This finding is not clearly erroneous. Several witnesses testified that Oestricker and James Chambers fought, and there was evidence that Chambers was looking for a boat. Moreover, both Darlene Chambers' false statement to police and obvious bias made her easily impeachable. Point denied.

### 6.

■ Chambers argues that counsel was ineffective in preventing him from testifying at guilt phase. At the 29.15 hearing, trial counsel testified that she had discussed with Chambers whether he would testify, and he agreed it was not a good idea. Chambers did not testify in either of his first two trials. Counsel testified that Chambers knew that the jury would learn of two prior convictions for assault if he took the stand, and those convictions were a major factor in his decision not to testify.

On these facts, the motion court found that Chambers' testimony that he was prohibited from testifying "completely unworthy of belief" and that his decision not to testify was made knowingly after "adequate consultation with trial counsel." This Court's review of the record reveals that these findings are not clearly erroneous. Moreover, Chambers' prior assault convictions would have substantially undercut any effort to characterize Oestricker as the aggressor. Counsel's advice not to take the stand was not ineffective assistance.

### 7.

■ Chambers claims that counsel was ineffective in failing to impeach Norma Ieppert with prior statements about the time lapse between Oestricker leaving the bar and the gunshot. Chambers offers no theory how this impeachment would change the result. Point denied.

### 8.

■ Chambers contends that counsel was ineffective in failing to call Phil Turner and Mike Beck, neither of whom testified at the 29.15 hearing. Chambers asserts that Turner would have testified that "Mr. Hardesty owned a boat." Chambers offers no reason why this statement would change the result. Chambers argues that Beck would have testified that the needle-nosed pliers—which Chambers says Oestricker used as a weapon—were lying under Oestricker's body after the murder. The motion court denied this claim because no evidentiary basis supported it and because counsel could not locate Beck. The motion court's findings are not clearly erroneous.

### 9.

Chambers asserts that trial counsel was ineffective in failing to introduce mental health evidence at the guilt and penalty phases, particularly in failing to investigate and call Dr. Parwatikar as a mental health expert. The trial court found:

Defense counsel did not provide ineffective assistance of counsel by their failure to present a defense of mental disease or defect through the testimony of Dr. Parwatikar or other mental health professionals. Defense counsel testified that they knew Dr. Parwatikar and their decision not to present this testimony in defense was based on their review of the first trial transcript where this had been attempted with adverse consequences. Movant has further failed to prove that the production of such evidence would have affected the outcome of the trial.

■ At the 29.15 hearing, Chambers' counsel testified that she had done "a lot of work on [the] case, including investigating the possibility of calling Dr. Parwatikar as a witness during the penalty phase of [the] trial." Trial counsel gave three reasons for not calling Dr. Parwatikar. First, review of Parwatikar's testimony at the penalty phase of the first trial—where Chambers received the death penalty—indicated to counsel that Parwatikar did not stand up well on cross-examination. Second, counsel had reviewed Parwatikar's report of his examination of Chambers. Third, counsel's review of Department of Corrections records revealed psychological evaluations contrary to Parwatikar's and harmful to Chambers.

On this record, the trial court's conclusion that trial counsel was not ineffective is not clearly erroneous. Strategic choices made after investigation are virtually unchallengeable. *State v. Harris*, 870 S.W.2d 798, 817 (Mo. banc), *cert. denied*, —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Chambers' counsel did investigate Parwatikar's report, the contrary evidence likely to be used to undermine it, and his level of effectiveness with a previous jury.

Moreover, the trial court's finding that Chambers failed to establish prejudice is not clearly erroneous. Parwatikar testified at penalty phase in the first trial, and the jury sentenced Chambers to death. No evidence suggests that Parwatikar's testimony would change the result here.

 Chambers also argues that counsel should have obtained another doctor's evaluation because a 1971 medical record mentioned head trauma. Trial counsel testified that she interviewed Chambers' mother, aunt, brother, cousin and wife to prepare a history of his life. That preparation was reasonable, as the trial court found. Chambers further contends that counsel should have presented school records. The school records were unavailable; counsel is not ineffective for failing to produce unavailable documents. Where, as here, trial counsel makes a reasonable effort to investigate a defendant's mental status, counsel is not ineffective for not finding a psychiatrist who would testify a particular way. *State v. Mease,* 842 S.W.2d 98, 114 (Mo. banc 1992), *cert. denied,* — U.S. —, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993).

### B. Post–Conviction Counsel

 Chambers asserts that he received ineffective assistance of post-conviction counsel, and alternatively, that he was abandoned by that counsel because of alleged failures at the 29.15 hearing. Chambers has no federal constitutional right to assistance of post-conviction counsel. *Smith v. State,* 887 S.W.2d 601, 602 (Mo. banc 1994), *citing Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987); *Murray v. Giarratano,* 492 U.S. 1, 10, 109 S.Ct. 2765, 2770–71, 106 L.Ed.2d 1 (1989). States have substantial discretion to determine post-conviction procedures. *Smith,* 887 S.W.2d at 602, *citing Finley,* 481 U.S. at 559, 107 S.Ct. at 1995. This Court has consistently held that claims of ineffective assistance of post-conviction counsel are not cognizable. *See State v. Shurn,* 866 S.W.2d 447, 472 (Mo. banc 1993), *cert. denied,* — U.S. —, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

 Alternatively, Chambers alleges that certain failures of post-conviction counsel at the 29.15 motion hearing constituted abandonment. Post-conviction counsel filed a timely amended 29.15 motion raising 44 points. Thus, Chambers was not abandoned. *See Pollard v. State,* 807 S.W.2d 498, 502 (Mo. banc), *cert. denied,* 502 U.S. 943, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991); *Luleff v. State,* 807 S.W.2d 495, 498 (Mo. banc 1991); *Sanders v. State,* 807 S.W.2d 493, 495 (Mo. banc 1991).

## VII. Constitutional and Proportionality Issues

### A. Constitutionality of Death Penalty

 Chambers argues that the Missouri death penalty law is unconstitutional because it serves no legitimate state interest, prosecutors have discretion whether to seek the death penalty, and this Court's proportionality review is inadequate. These arguments are again rejected. *State v. Wise,* 879 S.W.2d 494, 524 (Mo. banc 1994).

 Chambers also contends that destroyed records from "clinics, hospitals, schools, and birth" contained mitigating evidence, and that the state could not, therefore, seek the death penalty. Chambers has made no allegation or showing that the records were destroyed in a calculated effort to circumvent disclosure requirements, nor that their exculpatory nature was apparent when the records were destroyed. Thus, his claim fails. *See California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2533–34, 81 L.Ed.2d 413 (1984).

### B. Proportionality Review

 This Court must decide (1) whether the jury imposed death "under the influence of passion, prejudice or any other arbitrary factor," (2) whether the jury's finding of statutory aggravating factors is supported by the evidence, and (3) whether the sentence is excessive or disproportionate to similar cases. *§ 565.014 RSMo 1978* (repealed and replaced by *§ 565.035.3 RSMo 1986* ).

Chambers presents a threshold question by his motion to consider proportionality data submitted in *State v. Parker,* and to supplement that data with an affidavit. The

data and affidavit are accepted for filing, but do not appear to aid proportionality review. *See State v. Parker*, 886 S.W.2d at 933 (Mo. banc 1994).

On this record, there is no evidence of passion, prejudice, or other arbitrary factors. As determined above, significant evidence supported both statutory aggravating factors found by the jury: a substantial history of serious assaultive convictions and depravity of mind.

This Court has affirmed sentences of death where the defendant had a history of prior convictions similar to Chambers: *State v. Reuscher*, 827 S.W.2d 710 (Mo. banc), *cert. denied*, — U.S. —, 113 S.Ct. 114, 121 L.Ed.2d 71 (1992) (prior convictions for sodomy, felonious restraint, and assault); *State v. Sidebottom*, 753 S.W.2d 915 (Mo. banc), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988) (prior conviction for sexual assault); *State v. Parkus*, 753 S.W.2d 881 (Mo. banc), *cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988) (three prior convictions for attempted strangulation and two for rape); *State v. Jones*, 749 S.W.2d 356 (Mo. banc), *cert. denied*, 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988) (prior convictions for burglary and assault); *State v. Nave*, 694 S.W.2d 729 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986) (prior convictions for robbery, armed robbery, forcible rape, and burglary).

This Court has also affirmed sentences of death where the nature of the crime was similar: *State v. Lingar*, 726 S.W.2d 728 (Mo. banc), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987) (hitting victim in head with tire jack after shooting him); *Reuscher*, 827 S.W.2d 710 (hitting victim in head with gun while victim near death); *State v. Feltrop*, 803 S.W.2d 1 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991) (mutilating victim's body); *State v. Wilkins*, 736 S.W.2d 409 (Mo. banc 1987), *aff'd sub nom. Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989) (stabbing victim after mortal wound was inflicted but before death); *State v. Rodden*, 728 S.W.2d 212 (Mo. banc 1987) (stabbing victim after fatal wound but

before death, then setting body afire after death); *State v. Grubbs*, 724 S.W.2d 494 (Mo. banc 1987), *cert. denied*, 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987) (cutting victim who was near death).

## VIII.

This court affirms the judgments.

All concur.