STATE of Missouri, Respondent,

v.

James ALDRICH, Appellant.

No. WD 51442.

Missouri Court of Appeals,
Western District.

Submitted Sept. 4, 1996.

Decided Dec. 24, 1996.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David R. Truman, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, P.J., and SMART and EDWIN H. SMITH, JJ.

PER CURIAM.

James Aldrich appeals from the trial court's judgment finding him guilty of deviate sexual assault in the first degree, a class C felony, in violation of § 566.070, RSMo 1994.[1] The trial court sentenced Aldrich as a prior offender to seven years imprisonment. On appeal, Defendant Aldrich claims that the trial court erred in (1) excluding from evidence the victim's testimony that she failed to report a prior sexual assault by another man; and (2) admitting into evidence the victim's testimony that defendant allowed children to watch a pornographic movie while in his care.

Lisa Schultz, 25 years old, the victim in this case, was married and had two children. In December 1994, Schultz temporarily moved in with Patricia and James Aldrich and their two children. Patricia Aldrich is Lisa Schultz' sister.

On December 10, 1994, at 6:30 a.m., Schultz returned to the Aldrich residence after working a twelve-hour late shift at a nursing home, where she was employed as a nurse's aid. Defendant let Schultz into the house and then went back to bed. Schultz went to sleep in the bedroom occupied by the four children. About an hour and a half later, she awakened to find defendant had pulled her sweatpants and her underpants down and had inserted his finger into her vagina. He was standing by the bed with his finger in her vagina. She testified that he "freaked her out" and she demanded to know what he was doing. Defendant responded to Schultz' indignation by saying that he did not "know what had come over him" and that if she wanted to press charges, he would "go ahead and go to prison." Schultz left the bedroom and headed toward the bathroom. At the time she had awakened, the children were out of the room. As she walked past the living room, she noticed what appeared to be a pornographic movie playing on the television. When Schultz' sister arrived home, Schultz told her what had happened. Schultz asked her sister to be there in the

future whenever Schultz would be sleeping. Five days after the incident, Schultz reported to the police what had happened. She waited to report the incident, hoping instead to encourage defendant and her sister to get some counseling. When defendant refused, she decided to press charges.

On January 4, 1995, defendant was charged with deviate sexual assault in the first degree. The jury trial was conducted on June 28, 1995. Defendant testified in his own defense and presented no other evidence. He admitted that he pulled down Schultz' sweatpants, but denied that he had inserted his finger into her vagina. He claimed he had seen Schultz sleeping on her side and had mistaken Schultz for his wife. He said after he had her underpants down, he realized Schultz was not his wife. It was at that very point, he says, that she woke up. He said he had intended to get his wife "in the mood" for later sex. He denied that the movie playing on the television that morning was pornographic. He also denied having any pornographic movies in the house. The state called defendant's wife (from whom he was separated at the time of trial) as a rebuttal witness, who testified that defendant owned several pornographic movies. After hearing all the evidence, the jury found defendant guilty and the trial court sentenced him as a prior offender to seven years imprisonment. Defendant Aldrich now appeals.

*Prior Sexual Assault*

In Point I, defendant claims that the trial court erred in sustaining the state's objection and not allowing defense counsel to elicit testimony from Lisa Schultz that she failed to report to police a prior sexual assault by another man. Defendant claims that the trial court's ruling violated his right to confront and cross-examine witnesses against him as guaranteed by the sixth and fourteenth amendments to the United States Constitution. Before the trial began, the state filed a motion in limine to prohibit evidence of a certain incident that occurred between

1. All statutory references are to RSMo 1994,     unless otherwise indicated.

Schultz and another man. The record provides no details of the incident. Defendant sought to introduce this evidence because Schultz never reported it to the police. Defendant claimed that the testimony was relevant as proper impeachment testimony because Lisa testified at trial that she delayed reporting the charged offense because she had never had this happen before. During cross-examination, defense counsel asked Schultz the following questions:

Q: [Defense Counsel] And then on Thursday the 15th you went and talked to Officer Dunn?

A: Yes.

Q: About 1:40 in the afternoon?

A: Yes.

Q: And what caused you to go down there at 1:40 in the afternoon?

A: I was kind of scared of going down there and I didn't—I was inbetween [sic]—I was scared to do it and not do it. I figured I would go down there— get brave enough to go down there and do it.

Q: When you say "scared," were you scared to go down to the police department?

A: Yes. Because I never had this happen before. It is new to me.

Q: You have not had anything like this happen before?

A: Well, long time ago I had a guy move in with me, but—

[Prosecuting Attorney]: Your Honor, I object. Whether she has been victimized in this manner before is irrelevant.

THE COURT: Sustained.

[Defense Counsel]: Your Honor, I was just responding to a response, an answer that she had given.

■ Defendant claims that this testimony should not have been excluded. Defendant failed to preserve the issue for appellate review. He made no offer of proof at trial as

to what Schultz would have said. In order to preserve this point for appellate review, after the trial court sustained the state's objection, defendant was required to demonstrate the materiality and relevance of the excluded evidence through an offer of proof. *State v. Harris*, 870 S.W.2d 798, 809 (Mo. banc), *cert. denied*, —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Without an offer of proof, we can only speculate as to whether the testimony he would have elicited from Schultz would have impeached her testimony. Also, without the offer of proof, the trial court was not fully informed of the nature of the offer. We are unable to determine that the trial court erred in sustaining the state's objection. Point I is denied.

### *Evidence of Other Crimes or Bad Acts*

In Point II, defendant asserts that the trial court erred in overruling his objection and in admitting into evidence Schultz' testimony that the children were watching a pornographic movie on the television on the morning of the incident. Defendant claims the trial court's ruling violated his rights to due process of law and a fair trial, as guaranteed by the sixth and fourteenth amendments of the United States Constitution, and Article I, §§ 10 and 18(a) of the Missouri Constitution, in that the testimony constituted evidence of other crimes or bad acts offered only to show defendant's bad character or propensity to have committed the crime charged.

■ Evidence of uncharged crimes or other misconduct is admissible only if it is highly relevant to a legitimate issue in the case. The probative value of the evidence must outweigh the prejudicial effect. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Appellate review concerning the admission of such evidence is done pursuant to an abuse of discretion standard. *State v. Chambers*, 891 S.W.2d 93, 104 (Mo. banc 1994). Evidence of other crimes or bad acts committed by a defendant is not admissible if offered for the purpose of showing that the defendant is a person of bad character, and therefore a person with a propensity to com-

mit criminal acts. *Harris,* 870 S.W.2d at 810. There are several instances in which evidence of bad acts are commonly considered to be of such a degree of relevance as to outweigh the prejudicial effects. These are instances when the issue on which the evidence is offered relates to: (1) motive; (2) intent; (3) absence of mistake or accident; (4) common scheme or plan; (5) identity; and (6) signature/modus operandi/corroboration. *Bernard,* 849 S.W.2d at 13–17.

■ Actually, Schultz never testified that the children were watching a pornographic movie. In fact, at the point of the first mention concerning the movie, there had been no testimony at all about what the children were doing, except for the statement that they were not in the bedroom. The state, after establishing that the children were not in the bedroom, asked this question:

Q: [Prosecuting Attorney] When he was in there messing with you and the kids were in the other room watching TV, do you know what they were watching on television.

[The trial judge and attorneys had a conference at the bench at the request of defense counsel. Defense counsel objected to the question on the grounds that it sought improper evidence of other crimes; the prosecution response to the objection was: "I think he is up in the morning, he is watching dirty movies and his wife is gone and the next thing you know he is in the bedroom messing with his sister-in-law. I think that's material." The objection was overruled. Proceedings returned to open court].

Q: Lisa, at 8 o'clock on December 10th, after you got up out of bed and left the room, what was on the television? What was playing on the television?

A: Dirty tape in the VCR.

Q: What on the VCR?

A: Dirty tape.

Schultz later specified in her testimony that what she saw on the television was an image of a naked woman, suggesting that it appeared to be a pornographic movie. Defendant claims that such testimony could only serve to inflame the jury against him, improperly allowing the jury to draw the inference that a man who would allow children to watch a pornographic video would certainly commit the crime charged. He contends that the evidence was offered only to show bad character and a propensity to commit the crime charged. He argues that even if it was offered for a proper purpose, the prejudicial effect of the evidence greatly outweighed any probative value. The state maintains that evidence of the movie was not offered to show that he was presenting the movie to the children but rather was offered to show defendant's state of mind (or, rather, state of sexual arousal) on the morning of the incident and his intent to sexually assault Schultz. The state argues that the probative value outweighs any prejudicial effect.

Defendant's primary concern expressed on appeal is that the question raising the issue of the movie gave the jury the impression that he allowed the children to watch a pornographic movie. The four children were all between the ages of 2 and 6. There was no testimony offered by the state that defendant specifically allowed the children to watch an inappropriate movie. The prosecutor's question regarding the children was objected to and never answered. Defense counsel did not request a curative instruction regarding the question. *See State v. Harris,* 711 S.W.2d 881, 885 (Mo. banc 1986). When the proceedings returned to open court, the prosecuting attorney rephrased the question to exclude mention of the children. He asked Schultz what was playing on the television when she walked by it. No further mention was made of the movie, until defendant testified. Defendant testified that when he woke up, he went into the living room and the children were watching a "resort beach movie" which included nudity from the waist up, but no sexual activity. Then, on cross-examination, he testified that he, not the children, put the videotape in the television, because he intended to watch it himself. He denied it was pornographic.

It appears that the initial question of the prosecutor about the children was objectionable. However, that question was never followed up as to what the children were doing. We cannot find that the trial court committed any error as to any testimony about the children. Defendant voluntarily launched into this area in his own testimony. In any event, to the extent that he also complains about *any* testimony about the movie, we conclude that the evidence that *he* was watching a pornographic movie could reasonably be viewed as logically relevant. Such evidence was not presented to show defendant was a person of bad character who, because of his bad character, is probably guilty. The evidence that a sexually oriented videotape was being played on the television at the time that defendant was the only awake adult in the house had some logical tendency to rebut defendant's contention that he did not place his finger in Schultz' vagina. The evidence as to the "dirty movie" allowed an inference that defendant had, by watching the movie, become sexually stimulated, which made it more likely that his reason for pulling down Ms. Schultz' pants (which he admitted doing) was for the purpose of continuing to engage in actions that would provide immediate sexual gratification, and not simply to get his wife "in the mood" for later sex. While the evidence concerning the videotape may, in our view, have had a slight prejudicial effect, there was also a legitimate probative value that arose from the dispute about whether he sexually assaulted Ms. Schultz. This balancing of the prejudicial effect against the probative value is a very subjective matter, a matter about which the trial court is best suited to make a determination. The trial court has broad discretion in determining the relevancy of evidence. *State v. Parkhurst,* 845 S.W.2d 31, 36 (Mo. banc 1992). The trial court could reasonably have concluded that the jury was entitled to know the entire circumstances of the context out of which defendant's actions took place, in order to help them determine his state of mind, and his intent, at the time of the incident. This court will not interfere with such ruling ab-

sent a clear showing of an abuse of discretion. *Id.* In context, we cannot say this was an abuse of discretion. Point II is denied.

Judgment is affirmed.